Nada I. Shamonki (SBN 205359)
NIShamonki@mintz.com
Nadia A. Zivkov (SBN 342509)
NAZivkov@mintz.com
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

*Attorneys for Defendants Aylo Global Entertainment Inc., Aylo USA Incorporated, and Toqon, LLC*

[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

M.S. AND C.P., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

vs.

AYLO GLOBAL ENTERTAINMENT, INC. AYLO USA INCORPORATED, AND TOQON, LLC D/B/A TRAFFICJUNKY,

Defendants.

Case No. 2:25-cv-01139-DJC-JDP

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OR TO COMPEL ARBITRATION**

Assigned to the Hon. Daniel J. Calabretta

Hearing
Date: December 4, 2025
Time: 1:30 p.m.
Location: 501 I Street
Courtroom 7, 14th Floor
Sacramento, CA 95814
Second Amended Complaint Filed: August 27, 2025
Trial Date: Not set

**TABLE OF CONTENTS**


Page

PRELIMINARY STATEMENT ... 1

ARGUMENT ... 2

I. Plaintiffs have not established their prima facie burden of demonstrating personal jurisdiction over Defendants. ... 2

A. Plaintiffs have failed to present evidence controverting the fact that Aylo Global, Aylo USA, and Toqon do not operate Pornhub, and did not engage in any relevant activity in California. ... 2

B. Plaintiffs are not entitled to a fishing expedition of jurisdictional discovery. ... 5

II. Plaintiffs agreed to arbitrate their claims because Pornhub's Terms of Service have contained an arbitration clause during the entire relevant time period. ... 6

III. Plaintiffs' Opposition fails to cure the numerous pleading defects, and indeed concedes dismissal on several claims. ... 8

A. Plaintiffs' VPPA claim (Count V) fails. ... 8

1. Google is not an "ordinary person," and so Pornhub did not disclose any PII. ... 8

2. Plaintiffs are not "consumers" under the VPPA. ... 9

B. Plaintiffs' consent defeats their ECPA (Count VI), CIPA (Count VII), invasion of privacy (Count I), negligence (Count II), and unjust enrichment claims (Count IV). ... 11

1. The Privacy Policy was incorporated by reference into the Terms of Service to which Plaintiffs agreed. ... 11

2. The Privacy Policy -- regardless of the date -- discloses the complained-of data collection and disclosure practices. ... 13

C. Plaintiffs' unjust enrichment claim (Count IV) also fails because a plaintiff cannot sue in tort and claim unjust enrichment as a matter of law. ... 14

D. Plaintiffs concede their remaining claims fail. ... 15

CONCLUSION ... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ade v. Viki, Inc.*,
2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) .......... 10

*Baton v. Ledger SAS*,
2021 WL 5226315 (N.D. Cal. Nov. 9, 2021) .......... 4

*Bauman v. DaimlerChrysler Corp.*,
644 F.3d 909 (9th Cir. 2011) .......... 4

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .......... 15

*Carroll Shelby Licensing, Inc. v. Halicki*,
2021 WL 4895736 (C.D. Cal. Apr. 15, 2021) .......... 5

*Carroll v. Chick-Fil-A, Inc.*,
2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 10, 11

*Dadbod Apparel LLC v. Hildawn Design LLC*,
2024 WL 1886497 (E.D. Cal. Apr. 30, 2024) .......... 5

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 9

*Fleites v. Mindgeek S.A.R.L.*,
2022 WL 4455558 (C.D. Cal. July 29, 2022) .......... 5

*Fleites v. MindGeek S.A.R.L.*,
2025 WL 2902301 (C.D. Cal. Sep. 26, 2025) .......... 2, 5

*Freitas v. Cricket Wireless, LLC*,
2022 WL 1082014 (N.D. Cal. Apr. 11, 2022) .......... 12

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 8

*Holl v. United States Dist. Court (In re Holl)*,
925 F.3d 1076 (9th Cir. 2019) .......... 11, 12

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) .......... 14

*In re Hulu Privacy Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ........ 10

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 8

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 10

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) ........ 10

*Kuzenski v. Uproxx LLC*,
2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ........ 10

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025) ........ 10

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ........ 5

*Lockhart v. United States*,
577 U.S. 347 (2016) ........ 14

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) ........ 9, 10, 11

*Navarro v. SmileDirectClub, Inc.*,
2022 WL 1786582 (N.D. Cal. June 1, 2022) ........ 7

*Pileggi v. Wash. Newspaper Publ'g Co., LLC*,
146 F.4th 1219 (D.C. Cir. 2025) ........ 10

*Rios v. Cognizant Tech. Sols. U.S. Corp.*,
2025 WL 1684178 (E.D. Cal. June 16, 2025) ........ 7, 8

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*,
60 F. Supp. 3d 21 (D.D.C. 2014) ........ 4

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) ........ 7

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 3

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) ........ 2

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 15

*Way v. JP Morgan Chase Bank, N.A.*,
2018 WL 1518677 (E.D. Cal. Mar. 28, 2018) .......... 15

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .......... 3, 5

**Statutes**

17 U.S.C.
§ 512(c)(3)(a)(i) .......... 4

N.Y. Gen. Bus. Law
§ 349 .......... 15

**PRELIMINARY STATEMENT**

Having now had the opportunity to amend their Complaint twice after seeing Defendants' arguments, Plaintiffs' Opposition confirms that those serial amendments have done nothing to cure the numerous fatal defects in their Complaint.

*First*, although Defendants have made clear which entity is the proper entity to sue, Plaintiffs have pled their claims only against entities that have no involvement with the issues in this case, as Defendants' evidence made clear. Plaintiffs' "evidence," by contrast, is a hodgepodge of mere allegations that they have seen others make, but which they tellingly chose *not* to allege in their own Complaint. And, in any event, those allegations do nothing to dispute the evidence that Defendants are not involved in the alleged data collection or disclosure here. Yet, rather than simply name the correct defendant and proceed with prosecuting the claims they seek to bring on behalf of a putative class, Plaintiffs suggest time-consuming and costly jurisdictional discovery to satisfy their mere hunch that they might find something else (or, presumably, seek leave to amend to sue the proper defendant months later).

*Second*, Plaintiffs' attempt to slip their arbitration obligations fails. In their Opposition, Plaintiffs reveal for the first time when they claim to have signed up for their accounts on Pornhub: sometime "in 2024." Notwithstanding their lack of specificity, they also claim in the next breath that they cannot be bound by their agreement to arbitrate these claims because Defendants could not guess on which specific dates they signed up for their accounts, and thus present the Court with the precise agreements and sign-up pages Plaintiffs encountered on the exact days they signed up (dates which Plaintiffs themselves apparently do not know). Plaintiffs' tactics should be rejected. And, what's more, the evidence is indisputable that at every point in 2024, Pornhub's Terms of Service contained the same clause requiring Plaintiffs to arbitrate this dispute, and its sign-up page contained the same disclosure that by signing up, Plaintiffs agreed to those Terms and the arbitration agreement in it.

Were they to make it as far as the merits (and they should not), Plaintiffs' Opposition confirms that each of their claims fails as a matter of law. Their claim under the VPPA fails because they still cannot explain how anyone other than Google can decode their data to identify them specifically, or how they entered into any relationship with Pornhub that relates to their alleged VPPA violations.[1] Even ignoring Plaintiffs' lack of specificity as to when they signed up for their accounts, their consent to Pornhub's Privacy Policy indisputably dooms the bulk of their claims because, since at least 2023, Pornhub has disclosed that it might engage in these precise activities of which Plaintiffs now complain. Which version of the Privacy Policy applies is thus irrelevant; Plaintiffs consented under any of them. And they have failed to respond -- and thus waived -- their remaining claims.

Plaintiffs' Second Amended Complaint should be dismissed without leave to amend, or the case should be stayed while Plaintiffs are compelled to arbitrate.

## ARGUMENT

### I. Plaintiffs have not established their prima facie burden of demonstrating personal jurisdiction over Defendants.

#### A. Plaintiffs have failed to present evidence controverting the fact that Aylo Global, Aylo USA, and Toqon do not operate Pornhub, and did not engage in any relevant activity in California.

Plaintiffs have presented no *evidence* disputing the fact that Aylo Global and Aylo USA do not operate Pornhub. Instead, Plaintiffs rely on *allegations* that have not been proven by other parties. (*See* Opp'n at 6 (relying on FTC's and Texas Attorney General's allegations in complaints).) But just because someone else alleged it does not make it fact. And Plaintiffs bore the burden of "com[ing] forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted); *see Fleites v. MindGeek S.A.R.L.*, 2025 WL 2902301, at *24 (C.D. Cal. Sep. 26, 2025) ("disputed allegations in the complaint that are not supported

[1] To correct the record and Plaintiffs' click-bait statement (at 1), Defendants in their Motion to Dismiss "do not challenge the [allegation] that they collected and disclosed user information" because the Court must, under the applicable legal standard, take that allegation as true for purposes of this motion.

with evidence or affidavits cannot establish jurisdiction"). If a plaintiff "cannot 'simply rest on the bare allegations of its complaint'" in the face of contradictory evidence, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), they cannot rest on someone else's bare allegations instead.

Moreover, the allegations do not even speak to any relationship between Aylo Global or Aylo USA and Pornhub specifically. Instead, the allegations Plaintiffs cite allege that all Defendants in the FTC action -- which included nine different entities -- "operated as a common enterprise" to operate numerous business functions and websites, (ECF No. 50-2, ¶ 32), and that the U.S. entities provide services for that collective business's operations, (*id.* ¶ 51).[2] Plaintiffs have identified no allegation that Aylo Global or Aylo USA provides any services directly related to Pornhub specifically, nor do they point to any allegations linking (as they must) the specific activities Aylo Global or Aylo USA engaged in *to their claims* -- *i.e.*, the alleged deployment of pixel technologies on Pornhub.[3] *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504, 506 (9th Cir. 2023) (contact must relate to claims, but "'relate to' 'does not mean anything goes'"). And although Plaintiffs claim (Opp'n at 7) that the FTC Complaint "directly contradict[s]" the assertion that "only Aylo Freesites Ltd. operates" Pornhub, the FTC Complaint itself alleges that "Defendant AYLO Freesites Ltd. operates the Tube Sites," including Pornhub. (ECF No. 50-2 ¶¶ 35, 50.) In short, nothing in the FTC Complaint disputes Defendants' statements that they do not operate Pornhub.

Plaintiffs' reliance on four DMCA takedown requests is even further afield. Plaintiffs contend the takedown requests "clearly represent[] Aylo (USA) as the copyright holder." (Opp'n at 7.) But, aside from the fact that Aylo USA is listed as the sender, Plaintiffs do not say why that is so. Nor does that fact show Aylo USA owns the copyrights. It is not just the copyright holder who can send a DMCA request; they can

---

[2] Plaintiffs, already having amended their complaint twice, have not asserted any alter-ego allegations.

[3] Paragraphs 52 and 53 of the FTC Complaint do not allege that an Aylo Global employee "is responsible for content moderation on [Pornhub]," as Plaintiffs state. (*See* Opp'n at 7.)

also be sent by "a person authorized to act on behalf of the owner." 17 U.S.C. § 512(c)(3)(a)(i). Aylo USA sending DMCA requests on behalf of its sister entities for infringements of their copyrighted material -- material which has no apparent relationship to Pornhub or the issues in this case in any event -- does not evidence anything contrary to Defendants' statements that they do not operate Pornhub.

Moreover, even if the Court accepted Plaintiffs' unsubstantiated allegations that Aylo Global and Aylo USA operate Pornhub, Plaintiffs still have not tied any of those activities back to California. Plaintiffs claim in their Opposition that "all business decisions relating to Defendants' use of the Tracking Tools on the Website were made in the state of California, at Defendants' then-headquarters." (Opp'n at 5.) Yet that allegation appears nowhere in their Complaint. Nor does it logically follow, since Plaintiffs do not allege that Aylo Global and Aylo USA only had a single office.[4]

As for Toqon, attempting to contradict sworn testimony that it does not operate TrafficJunky, Plaintiffs rely on a morass of corporate records showing an association between TrafficJunky and Canada. (*See* Opp'n at 8–9.) But that evidence is actually self-defeating. Plaintiffs do not (and cannot) dispute that Toqon is a Delaware entity headquartered in Texas. (*See* ECF No. 40-2 ¶ 11.) So even accepting Plaintiffs' evidence, it still does not show that Toqon -- a U.S., not Canadian, company -- is the entity that operates TrafficJunky. Nor does the reference to Toqon's name on TrafficJunky's website refute Mr. Link's sworn testimony that Aylo Freesites Ltd -- the entity Plaintiffs declined to sue -- operates TrafficJunky. As an advertising service, TrafficJunky needs a processor for payments for advertisements, which is the role Toqon serves. (*See* ECF No. 40-2 ¶ 12 (noting that Toqon is a payment processor).) And

---

[4] To the extent Plaintiffs are attempting to rely on general personal jurisdiction, "[c]ourts have uniformly held that *general* jurisdiction is to be determined no earlier than the time of filing of the complaint." *Baton v. Ledger SAS*, 2021 WL 5226315, at *4 (N.D. Cal. Nov. 9, 2021), *overruled on other grounds*, 2022 WL 17352192 (9th Cir. Dec. 1, 2022); *see Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 913-14 n.7 (9th Cir. 2011) (general jurisdiction "is determined at the time the suit was filed"), *overruled on other grounds*, 571 U.S. 117 (2014); *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 60 F. Supp. 3d 21, 30 (D.D.C. 2014) (collecting cases). Plaintiffs conceded Aylo Global and Aylo USA were not headquartered in California at the time of their Complaint. (*See* ECF No. 1, ¶¶ 26–27.)

TrafficJunky's website is consistent that Aylo Freesites operates TrafficJunky, not Toqon. (*See* Lisy Decl., Ex. G at 1 (TrafficJunky terms of services defining "TrafficJunky" to mean Aylo Freesites Ltd); *id.*, Ex. H at 1 (same in TrafficJunky privacy notice).)

### B. Plaintiffs are not entitled to a fishing expedition of jurisdictional discovery.

Finally, Plaintiffs' request for jurisdictional discovery -- to which they claim they are entitled given Defendants' evidence disputing their allegations (Opp'n at 9) -- ignores well-settled caselaw. Defendants' specific denials shift the burden to Plaintiff to show that jurisdictional discovery would be more than a "fishing expedition." *Yamashita*, 62 F.4th at 508. Plaintiffs cannot meet that burden by resting on "bare allegations in the face of specific denials," *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022), or "based on little more than a hunch that it might yield jurisdictionally relevant facts," *e.g.*, *Carroll Shelby Licensing, Inc. v. Halicki*, 2021 WL 4895736, at *5 (C.D. Cal. Apr. 15, 2021); *see also Dadbod Apparel LLC v. Hildawn Design LLC*, 2024 WL 1886497, at *6 (E.D. Cal. Apr. 30, 2024) (Calabretta, J.) (denying jurisdictional discovery where plaintiff "fail[ed] to identify any specific facts, transactions, or conduct that would give rise to personal jurisdiction").

Plaintiffs' jurisdictional discovery is no more than a fishing expedition. Defendants have made clear since the start of this case that the operator of Pornhub, and thus the correct entity to sue, is Aylo Freesites Ltd -- an entity which has not objected to personal jurisdiction in California in other cases. *See, e.g.*, *Fleites v. Mindgeek S.A.R.L.*, 2022 WL 4455558, at *2 (C.D. Cal. July 29, 2022) (noting testimony that "MG Freesites Ltd," which later changed its name to Aylo Freesites Ltd, "operates Pornhub" and did "not object to the Court's personal jurisdiction"). Yet Plaintiffs have chosen, after two rounds of amendments in response to the same jurisdictional arguments Defendants now present, not to name the relevant entity. Their proposed frolic and detour into unrelated entities should be rejected. *Cf. Fleites*, 2025 WL 2902301, at *24 (concluding, after two years of jurisdictional discovery, that plaintiff failed to

demonstrate any basis to exercise personal jurisdiction over another entity in the Aylo corporate family).

## II. Plaintiffs agreed to arbitrate their claims because Pornhub's Terms of Service have contained an arbitration clause during the entire relevant time period.

Plaintiffs do not actually dispute that they agreed to arbitrate. Instead, in an attempt to dodge those binding arbitration obligations through inadequate pleading, Plaintiffs contend that Defendants cannot compel arbitration here because Defendants did not submit a copy of the Terms of Service applicable on the date Plaintiffs registered for accounts on Pornhub. (Opp'n at 11.) Contrary to Plaintiffs' contention that they "allege that they registered for their Website accounts in 2024," they allege no such thing. Instead, Plaintiffs allege only that they "registered for an account on the Website and utilized it on [their] personal electronic devices on multiple occasions in 2024 and 2025, to view pornographic media." (SAC ¶¶ 18, 23.) That does *not* allege when -- or even what year -- Plaintiffs registered for an account. Plaintiffs cannot avoid a binding arbitration agreement merely by hiding the ball about when they signed up for an account, and thus agreed to arbitrate.

In any event, the Pornhub Terms of Service to which Plaintiffs agreed contained an arbitration agreement on January 1, 2024, and have contained one ever since. The arbitration agreement in effect on that date is, in relevant part, exactly the same as the agreement submitted in support of Defendants' Motion:

| January 1, 2024 Version | Version from Defendants' Motion |
|---|---|
| [Y]ou and we agree that we will resolve any disputes between us (including any disputes between you and a third-party agent of ours) through binding and final arbitration instead of through court proceedings. . . . All controversies, claims, counterclaims, or other disputes arising between you and us or you and a third-party agent of ours (each a "Claim") shall be submitted for binding arbitration in accordance with the Rules of the American Arbitration Association . . .<br><br>(Lisy Decl. Ex. I at 7.) | [Y]ou and we agree that we will resolve any disputes between us (including any disputes between you and a third-party agent of ours) through binding and final arbitration instead of through court proceedings. . . . All controversies, claims, counterclaims, or other disputes arising between you and us or you and a third-party agent of ours (each a "Claim") shall be submitted for binding arbitration in accordance with the Rules of the American Arbitration Association . . .<br><br>(ECF No. 28-3 at 12.) |

The exact same language occurs in each iteration of the Terms of Service applicable throughout all of 2024.[5] (*See* Lisy Decl., Ex. I at 7 (January 31, 2024 version, last updated August 17, 2023); *id.*, Ex. J at 11 (May 1, 2024 version, last updated February 1, 2024); *id.*, Ex. K at 10 (May 20, 2024 version, last updated May 2, 2024); *id.*, Ex. L at 10 (July 30, 2024 version, last updated May 23, 2024); *id.*, Ex. M at 10 (November 28, 2024 version, last updated July 31, 2024); *id.*, Ex. N at 11 (January 2, 2025 version, last updated December 2, 2024).)[6] Plaintiffs have presented no evidence to meet their burden of disputing the existence of an agreement to arbitrate. *See Rios v. Cognizant Tech. Sols. U.S. Corp.*, 2025 WL 1684178, at *3 (E.D. Cal. June 16, 2025) (once movant meets its burden, the burden shifts to the party opposing arbitration "to identify a factual dispute as to the agreement's existence").

Plaintiffs also do not (because they cannot) meaningfully dispute that they were informed that "[b]y signing up, [they] agree[d] to [Pornhub's] Terms and Conditions." (*See* Mot. at 10; Opp'n at 12.) Although they contend that Defendants must submit the entire webpage of the sign-up window, they do not provide any argument as to why Defendants must do so. In any event, Defendants have supplied it here. (*See* Lisy Decl. Ex. O). Nor do they, again, indicate which date on which they signed up, and thus which date is relevant. (*See* Opp'n at 12.) But again, in any event, Pornhub's sign-up page contained the same exact language in January 2024 as presented in Defendants' Motion. The same language occurs on version after version of the sign-up page throughout 2024. (*See* Lisy Decl. Exs. P-U.) And Plaintiffs, again, have presented no evidence to meet their burden of disputing the existence of an agreement to arbitrate -- for example, that the webpage Defendants submitted did not resemble the webpage they encountered. *See Rios*, 2025 WL 1684178, at *3 (compelling arbitration where

---

[5] Defendants have asked Plaintiffs for the date on which they registered for their accounts, but Plaintiffs have not provided that information.

[6] The Court can indeed consider historical versions of the Terms of Service from tools like the Wayback Machine. *See, e.g.*, *Navarro v. SmileDirectClub, Inc.*, 2022 WL 1786582, at *2 (N.D. Cal. June 1, 2022) (considering Wayback Machine version of arbitration agreement); *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1193 (W.D. Wash. 2024) (same). These documents are equally accessible to Plaintiffs.

plaintiff did not present any evidence disputing that it signed an arbitration agreement).

No matter when Plaintiffs signed up for an account in 2024 -- a date Plaintiffs still have not revealed, even after Defendants requested they do so -- they agreed to arbitrate their claims. This Court should stay this case and compel arbitration.

## III. Plaintiffs' Opposition fails to cure the numerous pleading defects, and indeed concedes dismissal on several claims.

### A. Plaintiffs' VPPA claim (Count V) fails.

#### 1. Google is not an "ordinary person," and so Pornhub did not disclose any PII.

Plaintiffs first claim that "there is no question" that the Google 'cid' cookie and "user's language preferences, screen resolution, browser software and version, operating system software and version, device type, network type, and internet service provider" are "capable of identifying specific users." (Opp'n at 18.) But they do not allege facts explaining how that is true under the ordinary-person standard applicable in this Circuit (which standard Plaintiffs tellingly never mention). And the Third Circuit, applying the same standard applied in this Circuit, concluded that information does not constitute PII, as Defendants argued, and to which Plaintiffs have no response. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (combination of a user's browser and operating system settings not PII even though plaintiffs alleged that the odds of two people having the same combination of settings was 1 in 286,777).

Instead, Plaintiffs rely on cases addressing Facebook IDs, a different technology that operates in (legally significant) different ways. (Opp'n at 20–21.) Facebook IDs constitute PII because they "can be used, by anyone, to easily identify a Facebook user . . . by simply appending the [FID] to www.facebook.com." *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024). That is why Facebook IDs are found to meet the ordinary-person standard: anyone with a computer can identify a specific individual using them. By contrast, Plaintiffs do not -- and indeed cannot -- allege that anyone *other than* Google can connect the Google ID numbers to individuals. (*See* Opp'n at 20 ("Plaintiffs allege, and discovery will confirm, that the

Google ID numbers disclosed to Google by Defendants allow *Google* to identify their Google accounts" (emphasis added)).) But Google -- the "online behemoth" that Plaintiffs allege is "the largest digital advertiser in the country" and engages in "monumental" and "ubiquitous" "surveillance of Americans' internet usage," (SAC ¶¶ 7, 42, 48, 50) -- is far from an ordinary person.

Plaintiffs' fall-back positions fare no better. They contend that *Eichenberger* contemplates that technology may change and that there is a factual issue for discovery. But a motion to dismiss tests whether, assuming Plaintiffs' allegations *can* be proven in discovery, Plaintiffs state a claim as a matter of law. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981, 982, 986 (9th Cir. 2017). Here, as in *Eichenberger*, they do not, because even assuming the technology operates the way Plaintiffs allege, the technology does not disclose PII within the meaning of the VPPA. Moreover, their efforts to distinguish *Eichenberger* fall flat. They acknowledge that there, Adobe could identify specific users based on information that Adobe had "from sources other than Defendant." (Opp'n at 19.) *See Eichenberger*, 876 F.3d at 981 ("Adobe uses the information obtained from Defendant to identify specific consumers by connecting that information 'with existing data already in Adobe's profile of th[ose] individual[s].'"). But the same is true here even under Plaintiffs' theory; just like Adobe, Google is able to "connect[] th[e] information 'with existing data already in [Google]'s profile." *See id.* And Defendants are not alleged to even have the key to translate the 'cid' cookies into specific Google accounts. Google has that information only "from sources other than [Defendants]." *See id.*

**2. Plaintiffs are not "consumers" under the VPPA.**

Plaintiffs next contend they are "consumers" under the VPPA merely because they created accounts on Pornhub and watched videos there. But plaintiffs must plead more than merely visiting a website and watching videos to be a "consumer." *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023). Plaintiffs' arguments fail for two independent reasons.

First, merely registering for an account -- which is all Plaintiffs allege here -- does

not make Plaintiffs "consumers" under the VPPA. *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *4 (C.D. Cal. Nov. 27, 2023) (plaintiff not a "consumer" even where he registered for an account). In each of the cases on which Plaintiffs rely, the plaintiffs alleged they provided the defendant with their "PII, including [their] name and email address." *See Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023); *Ade v. Viki, Inc.*, 2024 WL 1880153, at *1 (N.D. Cal. Mar. 28, 2024) (same); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012) (profile included "included name[ and] location preference information"); *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 254 (S.D.N.Y. 2025) (plaintiffs "submit their name, a valid email address, and payment information"); *see also Markels*, 689 F. Supp. 3d at 728 (plaintiffs gave "personal information").[7] Yet Plaintiffs here do not allege they provided Pornhub with their name or any email address linked to them. Indeed, they do not allege what they provided to Pornhub at all, save for "browser fingerprint" data (which, as explained, is not PII).

Second, Plaintiffs claim without explanation that there need not be any link between the subscription and the videos at issue, but there are a litany of cases reaching the opposite conclusion. *See Carroll v. Chick-Fil-A, Inc.*, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024) (collecting cases); *Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1237 (D.C. Cir. 2025) ("Subscribing to an e-newsletter that includes videos and video links, by itself, is not enough to make someone a 'consumer' under the Video Privacy Act. Instead, the videos for which viewing history is disclosed must be the same video materials or services that the individual purchased, rented, or subscribed to."). And indeed, in *Markels*, relied on by Plaintiffs (at 25), the court concluded that the plaintiffs *failed* to plead they were consumers because "the videos are readily available

---

[7] *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023), cited by Plaintiffs (at 23), explains that even providing one's name and address is not sufficient under the VPPA; the provision of the name and address must be in exchange for a good or service. *See id.* ("Consequently, a VPPA subscriber is not just someone who provides her name and address to a website, for some undisclosed purpose or benefit.").

to anyone who visits the site." 689 F. Supp. 3d at 728. "[T]here must be some nexus between the plaintiff and defendant and the video content provided." *Id.* That makes sense. Were it otherwise, a consumer who purchased a sandwich at Chick-fil-A could hold Chick-fil-A liable for VPPA violations for videos on its website. *See Carroll*, 2024 WL 1091193, at *1-2. But here, Plaintiffs do not allege that they accessed videos only available to registered users. Even M.S., who alleges he accessed "paid" videos, does not allege he could access those videos because he was an account holder (and indeed he has conceded that he has not paid anything to Pornhub (*see* Mot. at 17 n.6)).

### B. Plaintiffs' consent defeats their ECPA (Count VI), CIPA (Count VII), invasion of privacy (Count I), negligence (Count II), and unjust enrichment claims (Count IV).

#### 1. The Privacy Policy was incorporated by reference into the Terms of Service to which Plaintiffs agreed.

Plaintiffs contend that they did not agree to the Privacy Policy because it was merely incorporated into the Terms of Service. Their argument flouts California law (which they contend applies (Opp'n at 12)). "A contract may incorporate documents and terms by reference." *Holl v. United States Dist. Court (In re Holl)*, 925 F.3d 1076, 1084 (9th Cir. 2019). "Where it is clear that a party is assenting to a contract that incorporates other documents by reference, the incorporation is valid -- and the terms of the incorporated document are binding -- so long as the incorporation is clear and unequivocal, the reference is called to the attention of the other party and he consents thereto, and the terms of the incorporated document are known or easily available to the contracting parties." *Id.* (cleaned up).

For example, in *Holl*, the Ninth Circuit affirmed the district court's conclusion that a separate set of tariff-related terms were incorporated into UPS's Service Terms. *See id.* There, the Service Terms stated in the first section that: (1) the tariff terms were "expressly incorporated," (2) that the most recent version of the tariff terms were available on UPS's website, and (3) that the user "expressly acknowledges having 'reviewed, understood and agree[d] to the UPS Tariff/Terms and Conditions of Service.'"

*Id.* The Ninth Circuit agreed that the user had assented to the tariff terms by unequivocally assenting to UPS's Service Terms. *Id.*

Here, the Privacy Policy's incorporation is even more conspicuous than in *Holl*. The Pornhub Terms of Service (regardless of when in 2024) state in the first section that by using Pornhub, users agree to the Terms of Service "and our Privacy Policy" as well as other policies and guidelines "incorporated herein by reference." (*See* Lisy Decl., Ex. I at 1 (January 31, 2024 version, last updated August 17, 2023); *id.*, Ex. J at 1 (May 1, 2024 version, last updated February 1, 2024); *id.*, Ex. K at 2–3 (May 20, 2024 version, last updated May 2, 2024); *id.*, Ex. L at 2–3 (July 30, 2024 version, last updated May 23, 2024); *id.*, Ex. M at 2–3 (November 28, 2024 version, last updated July 31, 2024); *id.*, Ex. N at 2–3 (January 2, 2025 version, last updated December 2, 2024).) The Terms further not only guide the user to where to find the Privacy Policy, but explicitly hyperlink to it. (*Id.*, Ex. I at 1.) And they specifically provide in the first section that "[i]f you do not agree to any of these Terms of Service or our Privacy Policy, please do not access or use this Website." (*Id.*)[8] That is sufficient to incorporate the Privacy Policy into the Terms of Service. *See Holl*, 925 F.3d at 1084; *Freitas v. Cricket Wireless, LLC*, 2022 WL 1082014, at *8 (N.D. Cal. Apr. 11, 2022) (in-store electronic agreement incorporated terms not presented to customers in store where "(1) it referred to the separate Terms and Conditions; (2) it stated that the Terms and Conditions were available online, in phone boxes, and in-store upon request; and (3) it required that consumers sign to acknowledge that they accept defendant's Terms and Conditions (including dispute resolution by binding individual arbitration instead of jury trials or class actions)" (cleaned up)).

Because Plaintiffs consented to the Terms of Service, which incorporate the Privacy Policy, they consented to the data-collection practices disclosed in the Privacy

[8] Elsewhere, the Terms also state that "[b]y using this Website, you acknowledge that you have read and understand the terms of the Privacy Policy and that you consent to all actions taken by us with respect to your information in compliance with the Privacy Policy." (*Id.* at 6.)

Policy.

**2. The Privacy Policy -- regardless of the date -- discloses the complained-of data collection and disclosure practices.**

Plaintiffs consented to the Terms of Service, which incorporate the Privacy Policy, and thus they consented to the data-collection practices disclosed in the Privacy Policy.

Plaintiffs first contend they did not consent because Defendants did not identify the specific Privacy Policy to which they agreed. (Opp'n at 12–13.) As set forth above, Plaintiffs never alleged when they signed up for an account in an apparent attempt to preclude Defendants from relying on the applicable Policy. But regardless, Pornhub's Privacy Policy has stated since January 2024 that Pornhub might collect and disclose: (1) "pages you visit" and "search history" on Pornhub, (Lisy Decl. Ex. V at 1 (February 7, 2024 version, last updated August 17, 2023)[9]); (2) "browser and operating system information," (*id.*); (3) "devices you use to access Pornhub," (*id.*); and (4) that Pornhub uses "Google as a service provider to collect and analyze information about how users use the Website, including, by collecting website activity data through . . . third-party cookies set by Google," (*id.* at 2; *id.*, Ex. W at 3).[10] Those are the same relevant disclosures present on Pornhub's Privacy Policy today and submitted in Defendants' Motion. (*See* Mot. at 19.) Which specific Privacy Policy was in effect is, therefore, irrelevant to whether Plaintiffs consented, because they were presented with materially the same relevant disclosures regardless of the date on which they agreed to them.

Those disclosures also adequately inform Plaintiffs and users of the specific data collection and disclosure practices of which Plaintiffs now complain. Plaintiffs contend "the only" disclosure Pornhub makes about using data for advertising purposes is that it

---

[9] The other versions of the Privacy Policy in effect in 2024 contain the same relevant disclosures (save for some changes in terminology from "on the Website" to "Pornhub"). (*Id.*, Ex. W at 1 (May 20, 2024 version, last updated February 8, 2024; *id.*, Ex. X at 1 (January 4, 2025 version, last updated May 23, 2024).)

[10] The May 23, 2024 version of the Privacy Notice moved this disclosure to the Cookie Notice, incorporated into the Privacy Notice. (*See id.*, Ex. X at 3 (section 7).) The Cookie Notice contains the same disclosure with only some non-substantive spelling changes. (*Id.*, Ex. Y at 5 (June 29, 2024 version, last updated May 20, 2024); *id.*, Ex. Z at 5 (October 8, 2024 version, last updated July 1, 2024); *id.*, Ex. AA at 4–5 (January 4, 2025 version, last updated October 17, 2024).)

may use the data about users' "use of, or interest in, our Websites' content, products, or services, in order to develop and display content and advertising tailored to your interests on our Websites." (*See* Lisy Decl. Ex. V at 2; Opp'n at 15 (citing the current version of the Privacy Policy, which contains similar language).) But Plaintiffs misinterpret that disclosure (*i.e.*, that the advertising is only on Pornhub) because they ignore basic grammatical rules that "on our Websites" modifies "interests," and not "advertising." *See Lockhart v. United States*, 577 U.S. 347, 351 (2016) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote" (quoting Rule of the Last Antecedent, *Black's Law Dictionary* (12th ed. 2024))). The disclosure is thus not limited to advertising on Pornhub. Moreover, that is not the "only" disclosure, as Plaintiffs allege; Pornhub also states that it uses "Targeting and Advertising cookies" to "serve ads that might be of interest to the user." (*See* Lisy Decl. Ex. V at 2.[11]) Again, those disclosures are not limited to Pornhub.

Because Pornhub informed Plaintiffs that it might disclose the precise information they now allege was collected and disclosed to third parties -- including to Google -- Plaintiffs consented to the practices of which they now complain.

### C. Plaintiffs' unjust enrichment claim (Count IV) also fails because a plaintiff cannot sue in tort and claim unjust enrichment as a matter of law.

Plaintiffs' consent defeats their unjust enrichment claim, but their claim also fails for the independent reason that, as a matter of California law, a party cannot bring an unjust enrichment claim that is duplicative of their tort or statutory claims. *See In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs can not assert unjust enrichment claims that are merely duplicative of

[11] Again, the other versions of the Privacy Policy in effect in 2024 contain the same relevant disclosures, save for sometimes changing "the user" with "you." (*Id.*, Ex. W at 3 (May 20, 2024 version, last updated February 8, 2024; *id.*, Ex. X at 3 (January 4, 2025 version, last updated May 23, 2024, incorporating the Cookie Notice); *id.*, Ex. Y at 3 (June 29, 2024 version of Cookie Notice, last updated May 20, 2024); *id.*, Ex. Z at 3 (October 8, 2024 version of the Cookie Notice, last updated July 1, 2024); *id.*, Ex. AA at 3 (January 4, 2025 version of the Cookie Notice, last updated October 17, 2024).)

statutory or tort claims").[12] Nor can Plaintiffs preserve this claim as a ground to seek restitution. "In California, 'there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution.'" *Silver v. Stripe Inc.*, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021). "As a result, courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *10 (N.D. Cal. Aug. 30, 2019).

### D. Plaintiffs concede their remaining claims fail.

Plaintiffs do not respond to Defendants' arguments explaining why Plaintiffs' claims under New York General Business Law § 349 (Count VII) and the California Unfair Competition Law (Count IX) fail. (*See* Mot. at 20–21.) Nor do they respond to Defendants' argument that there is no common-law invasion of privacy claim under New York law (Count I as to C.P.), or that Plaintiffs' implied-contract claim is not well pled (Count III). (*Id.* at 22, 23–24.) Plaintiffs have thus waived any arguments on these claims, and the claims should be dismissed with prejudice. *See, e.g.*, *Way v. JP Morgan Chase Bank, N.A.*, 2018 WL 1518677, at *6 (E.D. Cal. Mar. 27, 2018).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction, stay the case pending arbitration, or dismiss the Second Amended Complaint with prejudice for failure to state a claim.

---

[12] Plaintiffs do not dispute this principle applies under New York law, and thus have waived any argument to the contrary. *Way v. JP Morgan Chase Bank, N.A.*, 2018 WL 1518677, at *6 (E.D. Cal. Mar. 28, 2018) (dismissing claim with prejudice where plaintiff failed to respond to arguments when opposing to motion to dismiss).

DATED: October 30, 2025

Respectfully submitted,

By: */s/ Christopher A. Lisy*

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, P.C.
Christopher A. Lisy (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
CALisy@mintz.com

Nada I. Shamonki
Nadia A. Zivkov
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
NIShamonki@mintz.com
NAZivkov@mintz.com

Seth R. Goldman (admitted *pro hac vice*)
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000
SRGoldman@mintz.com

*Attorneys for Defendants Aylo Global Entertainment Inc., Aylo USA Incorporated, and Toqon, LLC*