Sonjay Singh (*Pro Hac Vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (772) 783-8436
Email: ssingh@sirillp.com

Michael Connett (SBN #300314)
**SIRI & GLIMSTAD LLP**
700 S. Flower St., Ste. 1000
Los Angeles, CA 90017
Tel: 212-532-1091
Email : mconnett@sirillp.com

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**M.S.** AND **C.P.**, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

**AYLO FREESITES, LTD**,

Defendant.

Case No.: 25-cv-01139-DJC-JDP

[Assigned to the Hon. Daniel J. Calabretta]

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT OR TO COMPEL ARBITRATION**

Date: May 21, 2026
Time: 1:30 PM
Location: Courtroom 7, 14th Floor

TAC Filed: February 24, 2026
Reply Date: April 17, 2026

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ....................1

II. RELEVANT FACTUAL BACKGROUND ....................3

A. THE PARTIES ....................3

B. GOOGLE'S TRACKING TOOLS ....................3

III. LEGAL STANDARD ....................4

IV. ARGUMENT ....................4

A. THE PURPORTED ARBITRATION AGREEMENT CANNOT BE ENFORCED ....................4

i. Legal Standards Applicable to Online Arbitration Agreements ....................4

ii. PornHub Fails to Meet Its Burden to Establish the Existence of an Agreement to Arbitrate. ....................5

iii. PornHub Failed to Give Adequate Notice of its Arbitration Agreement ....................7

B. PLAINTIFFS DID NOT CONSENT TO PORNHUB'S DISCLOSURE OF THEIR SENSITIVE INFORMATION. ....................13

i. PornHub Failed to Provide Adequate Notice of its Privacy Notice. ....................13

ii. Even Assuming That Plaintiffs Agreed to the Privacy Notice, the Court Still Cannot Conclude That Plaintiffs Consented to Pornhub's Disclosures Because the Privacy Notice Does Not Actually Disclose Them. ....................14

C. PLAINTIFFS' VPPA CLAIM IS WELL-PLED ....................15

i. PornHub Disclosed Plaintiffs' Personally Identifiable Information to Google and TrafficJunky. ....................16

ii. Plaintiffs Satisfy the VPPA's Scienter Requirement. ....................18

iii. Plaintiffs Are Consumers Under the VPPA. ....................20

D. PLAINTIFFS DID NOT CONSENT TO DEFENDANT'S VIOLATIONS OF THE ECPA AND CIPA. ....................22

E. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL-PLED. ....................22

F. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL-PLED ....................23

G. UNJUST ENRICHMENT ....................24

V. CONCLUSION ....................................................................................25

## TABLE OF AUTHORITIES

*Ade v. Viki, Inc.*,
*2024* U.S. Dist. LEXIS 79467 N.D. Cal. Mar. 28, 2024) ---------- 22, 24

*Archer v. NBCUniversal Media, LLC*,
794 F. Supp. 3d (C.D. Cal. 2025) ---------- 2

*Ashcroft v. Iqbal*,
556 U.S. (2009) ---------- 4

*Brodsky v. Apple Inc.*,
2019 U.S. Dist. LEXIS 148808 (N.D. Cal. 2019) ---------- 31

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ---------- 26

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 10189 (N.D. Cal. 2024) ---------- 30

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d (9th Cir. 1996) ---------- 4

*Carroll v. Chick-Fil-A, Inc.*,
2024 U.S. Dist. LEXIS 45529 (N.D. Cal. 2024) ---------- 25

*Chabolla v. Classpass Inc.*,
129 F.4th (9th Cir. 2025) ---------- 8

*Chabolla v. Classpass Inc.*,
2023 U.S. Dist. LEXIS 122616 (N.D. Cal. 2023) ---------- 14

*Chambers v. Crown Asset Management, LLC*,
2021 71 Cal. App. 5th (2021) ---------- 6

*Danforth v. Placentia-Linda Hosp.*,
2023 Cal. Super. LEXIS 67193 (Cal. Super. Ct. 2023) ---------- 22, 23

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d (N.D. Cal. 2024 ---------- 28, 30

*Doe v. GoodRx Holdings, Inc.*,
2025 U.S. Dist. LEXIS 140287 (N.D. Cal. 2025) ---------- 29

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d (N.D. Cal. 2023) ---------- 28

*Doe v. Shady Grove Reproductive Science Ctr., P.C.*,
2025 U.S. Dist. LEXIS 192453 (D. Md. 2025) ---------- 18

*Edwards v. Mubi, Inc.*,
773 F. Supp. 3d (N.D. Cal. 2025) ---------- 21

*Eichenberger v. ESPN, Inc.*,
876 F.3d (9th Cir. 2017) ---------- 18, 19

*Ellis v. Wallet Buddha LLC*,
2025 U.S. Dist. LEXIS 266800 (C.D. Cal. 2025)---5, 7

*ESG Cap. Partners, Ltd. P'ship v. Stratos*,
28 F.3d (9th Cir. 2016)--- 29

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d (N.D. Cal. 2011) --- 30

*Gabrielli v. Haleon US Inc.*,
2025 U.S. Dist. LEXIS 169503 (N.D. Cal. 2025)--- 28

*Gaige v. Exer Holding Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. 2025) --- 19

*Garcia v. Bandai Namco Ent. Am. Inc.*,
2025 U.S. Dist. LEXIS 152616 (C.D. Cal. 2025)--- 20

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d (N.D. Cal. 2023)--- 22, 24

*Godun v. JustAnswer LLC*,
135 F.4th (9th Cir. 2025) --- 5

*Hernandez v. Hillsides, Inc.*,
47 Cal 4th (2009)--- 27

*In re Anthem Inc. Data Breach Litig.*,
2016 U.S. Dist. LEXIS 70594 (N.D. Cal. 2016) --- 30

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d (N.D. Cal. 2011)--- 30

*In re Facebook Inc. Internet Tracking Litigation ("Facebook Tracking")*,
956 F.3d (9th Cir. 2020) --- 29, 30

*In re Hulu Priv. Litig.*
2014 U.S. Dist. LEXIS 59479 (N.D. Cal. 2014) --- 20, 21

*In re Hulu Privacy Litig.*,
2012 U.S. Dist. LEXIS 112916 (N.D. Cal. 2012)--- 24

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 U.S. Dist. LEXIS 140212 (N.D. Cal. 2017)--- 30

*Jackson v. Fandom, Inc.*,
2023 U.S. Dist. LEXIS 125531 (N.D. Cal. 2023)--- 23, 25

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d (N.D. Cal. 2023)--- 23

*Johnson v. Walmart Inc.*,
57 F.4th (9th Cir. 2023)--- 4

*Jones v. Skullcandy, Inc.*,
2026 U.S. Dist. LEXIS 51569 (S.D. Cal. 2026)--- 9

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 U.S. Dist. LEXIS 178369 (N.D. Cal. 2023) ---------- 30

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th (9th Cir. 2024) ---------- 7, 8

*Knappenberger v. City of Phoenix*,
566 F.3d (9th Cir. 2009) ---------- 4

*Krayzman v. Istockphoto LP*,
2024 U.S. Dist. LEXIS 181294 (N.D. Cal. 2024) ---------- 16

*Kuzenski v. Uproxx LLC*,
2023 U.S. Dist. LEXIS 211822 (C.D. Cal. 2023) ---------- 24, 25

*Lee v. Plex, Inc.*,
773 F. Supp. 3d (N.D. Cal. 2025) ---------- 18

*M.G. v. Therapymatch, Inc.*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal.2024) ---------- 23

*Manza v. Pesi, Inc.*,
784 F. Supp. 3d (W.D. Wis. 2025) ---------- 20

*Markels v. AARP*,
689 F. Supp. 3d (N.D. Cal. 2023) ---------- 25

*Mason v. CreditAnswers, LLC*,
2008 U.S. Dist. LEXIS 68575 (S.D. Cal. 2008) ---------- 16

*McKee v. Audible, Inc.*,
2017 U.S. Dist. LEXIS 174278, (C.D. Cal. 2017) ---------- 16

*Meyers v. Alphabet, Inc.*,
2022 U.S. Dist. LEXIS 98298 (C.D. Cal. 2022) ---------- 16

*Mollett v. Netflix, Inc.*,
795 F.3d (9th Cir. 2015) ---------- 17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d (9th Cir. 2014) ---------- 5

*Nguyen v. Elsevier Inc.*,
2025 U.S. Dist. LEXIS 109280 (N.D. Cal. 2025) ---------- 20

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ---------- 9

*Niedziela v. Viator, Inc.*,
2025 U.S. Dist. LEXIS 189602 (C.D. Cal. 2025) ---------- 10

*Nixon v. Vegas.com, LLC*,
2025 U.S. Dist. LEXIS 265541 (N.D. Cal. 2025) ---------- 9, 11

*Oberstein v. Live Nation Entm't, Inc.*,
60 F.4th (9th Cir. 2023) ---------- 8

*Orr v. Bank of America, NT & SA*,
285 F.3d (9th Cir. 2002). ---------- 7

*Quad Int'l., Inc. v. Doe*,
2012 U.S. Dist. LEXIS 165216 (N.D. Cal. 2012)---------- 28

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d (C.D. Cal. 2024)---------- 31

*Ramirez v. Trusper, Inc.*,
2024 U.S. Dist. LEXIS 186303 (N.D. Cal. 2024)---------- 15

*Sellers v. Bleacher Report, Inc.*,
2023 U.S. Dist. LEXIS 131579 (N.D. Cal. 2023---------- 21

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th (2021)---------- 8, 15, 16

*Shultz v. TTAC Publ'g, LLC*,
2020 U.S. Dist. LEXIS 198834 (N.D. Cal. 2020)---------- 10, 11

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021)---------- 27, 28, 30

*Snow v. Eventbrite, Inc.*,
2020 U.S. Dist. LEXIS 193249 (N.D. Cal. 2020)---------- 6

*Specht v. Netscape Communs. Corp.,*
306 F.3d (2d Cir. 2002)---------- 5

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. 2024)---------- 28

*Starke v. SquareTrade, Inc.*,
913 F.3d (2d Cir. 2019)---------- 9

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d (S.D. Cal. 2020). ---------- 28

*Thornton v. Mindvalley, Inc.*,
2025 U.S. Dist. LEXIS 53202, (N.D. Cal. 2025) ---------- 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)---------- 29

*Wilson v. Huuuge, Inc.*,
944 F.3d (9th Cir. 2019)---------- 9, 10

## I. PRELIMINARY STATEMENT

A person's sexual desires are some of the most sensitive, personal aspects of their life. As the Supreme Court has stated, an individual's sexual behavior within their own home represents the "most private human conduct…in the most private of places." *Lawrence v. Texas*, 539 U.S. 558, 567 (2003). For many Americans, their sexual lives in some way involve viewing pornography. But, despite its prevalence, pornography usage is still a topic that most individuals prefer not to discuss. As a result, the unwanted disclosure of such information can be enormously harmful, impacting an individual's reputation, livelihood, personal relationships, and mental wellbeing.

Plaintiffs used the www.pornhub.com website (the "**Website**") operated by Defendant Aylo Freesites, LTD ("**PornHub**" or "**Defendant**") to view pornographic videos. Unbeknownst to them, PornHub secretly tracked and disclosed Plaintiffs' interactions with the Website, including specific, personally identifiable information about pornographic content that they viewed ("**Sensitive Information**"), and disclosed it to third parties, including one of the largest advertisers in the world, Google. The Sensitive Information includes, with regards to every video watched by Plaintiffs on the Website, the URL of the video, the title of the video, the sexual orientation associated with the video (e.g., straight, gay), the "pornstars" featured in the video, the uploader of the video, and whether the video was uploaded by an amateur content creator or a formal production company. This unwanted, unauthorized disclosure of Plaintiffs' Sensitive Information was made possible through PornHub's decision to install advertising surveillance software (the "**Tracking Tools**") on the Website, which enabled Google to harvest Plaintiffs' Sensitive Information for the purpose of targeted advertising. Additionally, PornHub recorded Plaintiffs' Sensitive Information using Tracking Tools to fuel its own proprietary advertising service, TrafficJunky, which specializes in selling targeted advertising specifically tailored to pornographic content.

In its Memorandum in Support of its Motion to Dismiss,[1] PornHub does not challenge the fact that it collected and disclosed user information. Instead, PornHub premises most of its arguments for dismissal on Plaintiffs purported agreement to its Terms of Service ("**Terms**"), including a privacy policy (**"Privacy Notice"**) linked therein.[2] ***First***, PornHub argues that Plaintiffs agreed to an arbitration clause (the "**Arbitration Agreement**") included in the Terms but fails to even establish the existence of any such agreement because it does not include a true and correct copy of the account creation page (the **"Sign-Up Page"**) that Plaintiffs purportedly used to create their accounts.[3] [4] Further, even if the authenticity of the Sign-Up Page were established, PornHub's argument would still fail because the design of the Sign-Up Page, on which the tiny text asserting the Terms is dwarfed by massive advertisements and graphic pornographic content, is woefully incapable of providing adequate notice under binding law. ***Second***, PornHub argues that Plaintiffs consented to its unlawful data collection through operation of its Privacy Notice, ignoring both the same lack of adequate notice that precludes arbitration, as well as the actual terms of the Privacy Notice which fail to disclose the third-party transmissions alleged by Plaintiffs. ***Third***, PornHub argues that Plaintiffs' claims under the Video Privacy Protection Act of 1988 (**"VPPA"**) fail because Plaintiffs' allegations do not implicate any "personally identifying information" (**"PII"**), ignoring that the information disclosed to Google was sent alongside a unique cookie

---

[1] *See* ECF 59-1 (the "Motion" or "Mot.").

[2] PornHub attaches multiple versions of its Terms and Privacy Notice to the Motion. *See* ECF 59-2 (the "Lisy Declaration" or "Lisy Decl."), Exs. A-G (various versions of the Terms) & Exs. P-S (various versions of the Privacy Notice). These documents are largely identical in relevant part, and Plaintiffs refer to them collectively as the "Terms" and "Privacy Notice" herein.

[3] Like with the Terms and Privacy Notices, the Lisy Declaration includes multiple versions of the Sign-Up Page, and the various Terms each include an arbitration clause. *See* Lisy Decl., Exs. H-O (various versions of the Sign-Up Page). Again, these documents are largely identical in relevant part, and Plaintiffs refer to them collectively as the "Sign-Up Page" and "Arbitration Agreement" herein.

[4] *See also* Declaration of Sonjay Singh ("Singh Decl.), filed contemporaneously.

identifier that allows Google to identify Plaintiffs through their Google accounts. For these reasons, and the reasons set forth below, PornHub's Motion should be denied.

## II. RELEVANT FACTUAL BACKGROUND

### A. THE PARTIES

Defendant Aylo Freesites, LTD operates the PornHub Website, which hosts a content library containing ***millions*** of pornographic videos. *See* ECF No. 57 (the **"Third Amended Complaint"** or **"TAC")**, ¶ 4. The Website is not merely one of the most popular destinations for online pornography but is one of the most popular websites in the world. Indeed, PornHub is the nineteenth most-visited website on the entire Internet and attracts ***billions*** of visitors annually. *Id*. Plaintiffs are individuals who accessed the Website to view its pornographic content. *Id*. ¶ 5.

### B. GOOGLE'S TRACKING TOOLS

Google offers website operators access to its proprietary suites of marketing, advertising and customer analytics software. *Id*. ¶ 8. Armed with these programs, website operators can leverage Google's enormous database of consumer information for the purposes of deploying targeted advertisements, performing minute analyses of their customer bases, and identifying new market segments that may be exploited. *Id*. But, in exchange for access to this software, website operators must install Google's Tracking Tools on their website—third party surveillance software that captures sensitive, personally identifiable information provided to the website operator by its users. *Id*. ¶ 9. Google aggregates the user information that it collects from third-party websites into "advertising profiles" consisting of all of the data that it has collected about a given user. *Id*. ¶ 47. With these advertising profiles, Google can sell hyper-precise advertising services, allowing its clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (e.g., recent marriages, graduation, or income, type of employment, use of specific apps or websites, and more). *Id*. Whether or not an Internet user has a Google

account, this information can be correlated to their identity through tracking cookies installed on the user's web browser. *Id*. ¶¶ 62-69.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## IV. ARGUMENT

### A. THE PURPORTED ARBITRATION AGREEMENT CANNOT BE ENFORCED

#### i. Legal Standards Applicable to Online Arbitration Agreements

PornHub, as the party seeking to compel arbitration, "bears the burden of proving the existence of an agreement to arbitrate by the preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). As the Internet and consumers' use of it has evolved, "it has not fundamentally changed the principles of contract." *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). Pursuant to those principles, "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (quoting *Specht v.*

*Netscape Communs. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002)).[5] An "enforceable contract will be found … only if" these conditions are met. *Id*.

Here, PornHub's arbitration argument fails for at least two independent reasons: (1) PornHub fails to meet its burden to establish the existence of the Arbitration Agreement it seeks to enforce; and (2) even had it done so, PornHub cannot establish that Plaintiffs (or any other Website user) consented to the Arbitration Agreement due to lack of adequate notice.

**ii. PornHub Fails to Meet Its Burden to Establish the Existence of an Agreement to Arbitrate.**

A "district courts 'ruling on a motion to compel arbitration must apply a 'standard similar to the summary judgment standard of Rule 56.'" *Ellis v. Wallet Buddha LLC*, 2025 U.S. Dist. LEXIS 266800, at *9 (C.D. Cal. Dec. 29, 2025) (quoting *S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1044 (S.D. Cal. Oct. 7, 2021)). As the moving party, PornHub has "the burden of establishing through admissible evidence that [Plaintiffs] had agreed to arbitrate the dispute." *Chambers v. Crown Asset Management, LLC,* 71 Cal. App. 5th 583, 590 (2021). It has not met this burden.

***First***, the exhibits used by PornHub to support its argument are not "true and accurate" copies despite the contrary representations in the Lisy Declaration. *See* Lisy Decl. ¶¶ 10-17. For example, every depiction of the PornHub Sign-Up Page differs significantly with regards to font color, background color, formatting, and graphical elements from the actual webpages that they purport to depict. Singh Decl. ¶ 3; *compare* Singh Decl., Ex. A, *with* Lisy Decl, Ex. H; *see also* § IV(A)(iii), *infra*, Figs. 1-2. The Sign-Up pages attached to the Lisy Declaration also differ from the screenshot PornHub presents in the body of its Motion. *Compare* Mot. at 9 (presenting a sign-up screen with fields for "Email" and "Password") *with* Lisy Decl, Ex. K

---

[5] "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Berman*, 30 F.4th at 855 (quoting *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 73 (2d Cir. 2017)).

(presenting a sign-up screen with fields for "Email," "Username (6+ characters)," and "Password"). Additionally, PornHub redacts extensive graphic sexual content present on the Sign-Up Page in its exhibits. *See* Lisy Decl. ¶¶ 10-17; Lisy Decl., Exs. H-P. As discussed further in § IV(a)(iii), *infra*, this redacted content is vital to the Court's analysis of adequacy of notice, and PornHub should have at least filed unredacted versions of Exhibits H-P under seal so that the Court could properly consider the design of the Sign-Up Page.[6] *See Snow v. Eventbrite, Inc.*, 2020 U.S. Dist. LEXIS 193249, at *15 (N.D. Cal. Oct. 19, 2020) ("[defendant] would only be able to carry its burden [to show an agreement to arbitrate] if it could show what the agreements looked like during the period when the plaintiffs would have actually seen them").

***Second***, the Lisy Declaration does not authenticate the documents it attaches. While PornHub argues that Plaintiffs interacted with the Sign-Up Page and Terms attached to the Lisy Declaration, "where documents are authenticated through personal knowledge, 'the affiant must be a person through whom the exhibits could be admitted into evidence.'" *Ellis*, 2025 U.S. Dist. LEXIS 266800, at *9-10 (quoting *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002)). Here, PornHub does not provide any signed contract between Plaintiffs and PornHub, nor does the Lisy Declaration identify any reason why Mr. Lisy has personal knowledge to authenticate the attached documents. Thus, PornHub fails to properly authenticate the agreements it asks the Court to rely upon and has failed to prove the existence of an agreement to arbitrate. *See id.*, at *13-14. (finding a CEO's declaration that plaintiff clicked a button could not be considered because the declaration did not establish that CEO "is responsible for developing or updating … webpages … such that he would know what content appeared on the webpage").

---

[6] The redacted content on the Sign-Up Page is described in the Singh Declaration. *See* Singh Decl. ¶ 3. The Court can also access the unredacted Sign-Up Page through the corresponding URLs provided in the in the Lisy and Singh Declarations. *See id*. ¶ 6; Lisy Decl. ¶¶ 10-17. If the Court requires, Plaintiffs are more than willing to submit a copy of the unredacted Sign-Up Page under seal for the Court's consideration.

**iii. PornHub Failed to Give Adequate Notice of its Arbitration Agreement.**

Under California law, "internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021)). Here, both parties agree that the Terms are a sign-in wrap agreement. *See* Mot. 10:1-8; *see also Sellers*, 289 Cal. Rptr. 3d 1, 21 (2021) (a "sign-in wrap agreement" is an Internet agreement formed by clicking "a button that allows the consumer to 'sign in' or sign up' for an account" rather than by "expressly manifest[ing] their assent"). When it comes to sign-in wrap agreements:

> [T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers. Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.

*Sellers*, 73 Cal. App. 5th at 453. "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. "To be conspicuous, [the] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (quoting *Keebaugh*, 100 F.4th at 1014. This inquiry is "fact-intensive" and is informed by the "totality of the circumstances." *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 514 (9th Cir. 2023).

Pursuant to these principles, courts "decline to enforce agreements where the terms are available only if users…parse through confusing or distracting content and advertisements," even where the terms are "are accessible via a conspicuous hyperlink in close proximity to a button necessary to the function of the website[.]" *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220-21 (9th Cir. 2019) (citing *Starke v. SquareTrade, Inc.*, 913 F.3d 279,

293 (2d Cir. 2019) and *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016)). Likewise, courts will decline to find adequate notice where the "link to the Terms is printed in a tiny font 'considerably smaller than the font used in the surrounding website elements'" because such formatting "'naturally directs the user's attention everywhere else[.]'" *Jones v. Skullcandy, Inc.*, 2026 U.S. Dist. LEXIS 51569, at *45 (S.D. Cal. Mar. 12, 2026) (quoting *Berman*, 30 F.4th at 856-57). For example, in *Starke*, the Second Circuit applied New York law to conclude that an Amazon purchase e-mail failed to provide adequate notice of Amazon's Terms because the "'Terms & Conditions' hyperlink is some of the smallest text in the email" and the interface was "cluttered with diverse text, displayed in multiple colors, sizes and fonts" including "various buttons and promotional advertisements." 913 F.3d at 293. Similarly, in *Nixon v. Vegas.com, LLC*, the Court found that despite a color differentiated hyperlink, the agreement message and hyperlinks were "overshadowed" because the agreement message was "12.5% smaller than the other text on the webpage," and other text on the webpage was "listed in all caps—even bolded font." 2025 U.S. Dist. LEXIS 265541, at *17-18 (N.D. Cal. Dec. 23, 2025). And, in *Niedziela v. Viator, Inc.*, the court found notice to be inadequate because while "the rest of [the defendant's] booking screen uses bright colors and icons, boxes, and bold fonts to attract the consumer's attention, the Terms of Use are displayed in simple text." 2025 U.S. Dist. LEXIS 189602, at *24 (C.D. Cal. Sep. 25, 2025). PornHub's Sign-Up Page suffers from all of these deficiencies.

***First***, the exhibits to the Lisy Declaration that purportedly depict the Sign-Up Page have been redacted to obscure its most distracting visual elements. *See* Lisy Decl. ¶¶ 10-17. The first redaction conceals a pornographic video of two individuals engaged in sexual intercourse titled "HOT HOTEL SEX WITH JASMINE," as well as smaller thumbnail images depicting sexual images and acts. Singh Decl. ¶ 3; *see also* Singh Decl., Ex. A. The second redaction is of multiple pornographic images, including images depicting graphic sexual acts. *Id*. The third redaction hides even more pornographic images consisting of frames captured

from videos hosted on the Website. *Id*. It is difficult to imagine more “distracting content and advertisements” than graphic pornography. *Wilson*, 944 F.3d at 1220-2; *see also Shultz v. TTAC Publ’g, LLC*, 2020 U.S. Dist. LEXIS 198834, at *10 (N.D. Cal. Oct. 26, 2020) (“the Court finds that the webpage design makes it exceedingly difficult to discern the significance of the hyperlink” to the terms and conditions where the page included a large green “Purchase” button, “a promotional video,” and an advertisement that “includes a colorful image and several large green checkmarks”).

***Second***, the text purportedly providing notice of the Terms is the ***smallest*** text on the page, dwarfed in size by multiple massive, all-caps advertisements for the Website’s features, the largest of which is placed ***directly next*** to the sign-up box and depicted in a font size that is ***six-hundred percent*** greater than the size used for the hyperlink to the Terms and accompanying text. *See* Figure 1, *infra*; Singh Decl., Ex. A. Obviously, this disparity between the size of the notice and surrounding content far outstrips the 12.5-percent difference found to defeat notice in *Nixon*. *See* 2025 U.S. Dist. LEXIS 265541, at *17; *see also Shultz*, 2020 U.S. Dist. LEXIS 198834 at *10 (noting that the relatively small size of the terms and conditions hyperlink was dwarfed by much larger text and checkboxes around it).

***Third***, as noted above, Exhibits H-P to the Lisy Declaration are not true and correct copies of the PornHub Sign-Up Page. While the Sign-Up Page depicted in Exhibits H-P display a white background with gray text, the actual Sign-Up Page has a black background with white text. *Compare* Figure 1, *infra*, *with* Figure 2, *infra*; *see also* Singh Decl., Ex. A. These contrasting colors further draw attention away from the minute notice of the Terms. *See Shultz*, 2020 U.S. Dist. LEXIS 198834 at *10 (focusing on the color choice for the hyperlink and how it was not sufficient to draw the reader’s attention). Exhibits H-P also fail to show the formatting of the Sign-Up Page, including disguising the fact that the graphic sexual video described above is placed ***directly beneath*** the sign-up box. *Id*. Moreover,

Exhibits H-P entirely omit a highly distracting graphic of two women kissing placed ***directly behind the sign-up box and notice***. *Id*.




*Figure 1.* Partial true screenshot of the actual webpage hyperlinked at ¶ 10 of the Lisy Declaration. A true screenshot of the full webpage is included as Exhibit A to the Singh Declaration.




*Figure 2.* Screenshot depicting the contents of Figure 1, *supra*, as they appear in Exhibit H to the Lisy Declaration.

Against these myriad deficiencies, PornHub proffers only two reasons why the Court should find that it provided adequate notice: the font color and placement of the hyperlink to the Terms on the Sign-Up Page. Mot. at 9:25-10:2. These meager offerings cannot overcome PornHub's egregious design choices under Ninth Circuit law. *See Wilson*, 944 F.3d at 1220-21 (holding that presence of distracting visual elements will defeat notice even where terms "are accessible via a conspicuous hyperlink in close proximity to a button necessary to the function of the website"); *Shultz*, 2020 U.S. Dist. LEXIS 198834 at *10 (rejecting the same argument even though "the statement 'I agree to the terms and conditions' is placed directly above the 'Complete Purchase' button, and the phrase 'terms and conditions' is hyperlinked in blue"); *Chabolla v. Classpass Inc.*, 2023 U.S. Dist. LEXIS 122616, at *11 (N.D. Cal. June 22, 2023) (finding that differentiating hyperlink by color was insufficient to establish adequate notice where page included other, larger text and graphic elements); *Nixon*, 2025 U.S. Dist. LEXIS 265541, at *17 (same, even where graphic elements were not present on sign-in page).

In short, "[f]ar from meeting the requirement that a webpage must take steps 'to capture the user's attention and secure her assent,' the design and content of [the Sign-Up Page] draw[s] the user's attention away from the most important part of the page." *Berman*, 30 F.4th at 857 (quoting *Nguyen*, 763 F.3d at 1178 n.1). PornHub cannot establish that it provided adequate notice to Plaintiffs after designing a Sign-Up Page that distracts from the Terms in its every aspect.[7]

---

[7] PornHub asserts that Plaintiff C.P. did not create a Website account. Plaintiffs do not concede this factual dispute. However, to the extent that the Court considers this argument, it cannot find that Plaintiff C.P. consented to arbitration.

### B. PLAINTIFFS DID NOT CONSENT TO PORNHUB'S DISCLOSURE OF THEIR SENSITIVE INFORMATION.

#### i. PornHub Failed to Provide Adequate Notice of its Privacy Notice.

***First***, the screenshot incorporated into Defendant's Motion clearly shows that the Sign-Up Page states that Website users agree only to PornHub's Terms and Conditions, ***not*** its Privacy Notice by making an account. *See* Mot. 9:9-17. Still, PornHub argues that Plaintiffs assent to its Terms also constituted assent to the Privacy Notice because the Privacy Notice is referenced in the Terms. *See* Mot. 4:16-22. Thus, the arguments made in § IV(A), *supra*, pertaining to the Arbitration Agreement within the Terms also apply to the Privacy Notice.

***Second***, because "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers[,]" California courts will not require consumers "to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Sellers*, 73 Cal. App. 5th at 453. Indeed, "[c]ourts commonly reject[] agreements…where a multi-step process is required for a website visitor to view the agreement at issue." *Ramirez v. Trusper, Inc.*, 2024 U.S. Dist. LEXIS 186303, at *15-16 (N.D. Cal. Oct. 11, 2024).

Here, to actually find the Privacy Notice, Plaintiffs would have had to (1) click the link to the "Terms of Conditions" on the Sign-Up Page, (2) puzzle out the difference between the "Terms and Conditions" described on the Sign-Up Page and the "Terms of Service" found behind the hyperlink, (3) scroll through the summary of the Terms of Service, (4) read the "Full Terms of Service" to even learn of the *existence* of the Privacy Notice, and then (5) follow the hyperlink to the actual terms of the Privacy Notice to actually learn of its terms. *See* Lisy Decl., Ex. C, at 3-4.[8] Then, to track down PornHub's Cookie Notice, Plaintiffs would need to scroll halfway through the Privacy Notice to find a ***single*** mention of a Cookie Notice.

---

[8] In some versions of the Terms, Plaintiffs would not even be provided with a hyperlink through which to access the Privacy Notice. *Compare* Lisy Decl., Ex. C, at 2 (no initial discussion of Privacy Notice) *with* Lisy Decl., Ex. A, at 2 (hyperlinking Privacy Notice).

*See Id.*, at § 7.[9] This attenuated process is wholly irreconcilable with the prominent notice requirements imposed under California law for enforcement of a sign-in wrap agreement. Indeed, courts applying California law routinely refuse to enforce website terms under similar circumstances.[10]

**ii. Even Assuming That Plaintiffs Agreed to the Privacy Notice, the Court Still Cannot Conclude That Plaintiffs Consented to Pornhub's Disclosures Because the Privacy Notice Does Not Actually Disclose Them.**

In its purported Privacy Notice, PornHub explains the ways in which it uses Website visitors' "personal information," including representing that PornHub provides this information to third parties "to perform certain services on [Pornhub's] behalf," and that Service Providers "are not permitted to process such information for any other purposes." *See* Lisy Decl., Ex. P, at 3. The only one of these uses which suggests that PornHub may use Sensitive Information for advertising purposes is PornHub's representation that it may "analyze your use of, or interest in the content, products, or services, [or] to display content and advertising tailored to your interests ***on Pornhub***." *Id*. (emphasis added). Plaintiffs' allegations directly contradict these promises. Plaintiffs allege that PornHub knowingly

---

[9] In some versions of the Privacy Notice, Plaintiffs would not even be provided with this single mention. *See* Lisy Decl., Ex. P (no Cookie Notice mentioned).

[10] *See Ramirez*, 2024 U.S. Dist. LEXIS 186303, at *15-16 (collecting cases to show that "[c]ourts commonly reject[] agreements…where a multi-step process is required for a website visitor to view the agreement at issue"); *Krayzman v. Istockphoto LP*, 2024 U.S. Dist. LEXIS 181294, at *1-2 (N.D. Cal. Oct. 3, 2024) (finding where the plaintiff "clicked a button that said 'I agree' with the statement…'you accept our Privacy Policy and Terms of Use,'" terms in a License Agreement linked to by both the Privacy Policy and Terms of Use were not enforceable); *Sellers*, 289 Cal. Rptr. 3d at 31 (finding that where plaintiff agreed to Terms of Service agreement, arbitration clause linked to by Terms of Service agreement was not enforceable); *McKee v. Audible, Inc.*, 2017 U.S. Dist. LEXIS 174278, at *31-32 (C.D. Cal. July 17, 2017) ("Alexa's disclosure that 'tapping' the Begin Setup button binds the user to *Alexa's* Terms…is not the same thing as a disclosure that initiating setup binds the user to the terms contained *in all seven of the agreements* listed as part of Alexa's Terms"); *Meyers v. Alphabet, Inc.*, 2022 U.S. Dist. LEXIS 98298, at *11 (C.D. Cal. Feb. 14, 2022) ("[statement that user agrees to Terms and Conditions] would not put a reasonable consumer on notice that by clicking Redeem, he or she would be agreeing to a forum selection clause found numerous hyperlinks away"); *Mason v. CreditAnswers, LLC*, 2008 U.S. Dist. LEXIS 68575, at *7 (S.D. Cal. Sep. 4, 2008) (forum selection clause not enforceable because "the Service Agreement does not emphasize or draw attention to the forum selection clause in any way").

transmitted their Sensitive Information to Google *via* the Tracking Tools not merely to enable ***PornHub's*** services and advertising on the Website but also to enable hyper-precise advertising services for Google's entire advertiser network used by millions of third parties. TAC ¶¶ 47-69. Thus, even if PornHub could prove that Plaintiffs assented to the purported Privacy Notice (it cannot), this consent would still not preclude Plaintiffs' claims because the purported Privacy Notice promises that any third-party disclosures are limited to those necessary for PornHub's own operations and advertising. Accordingly, the Privacy Notice fails to put readers on notice of the disclosures to Google for use by its massive third-party advertiser network alleged by Plaintiffs. *See id.*[11]

### C. PLAINTIFFS' VPPA CLAIM IS WELL-PLED.

The VPPA "prohibits a 'video tape service provider' from knowingly disclosing 'personally identifiable information' about one of its consumers '*to any person*'..." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (citations omitted) (emphasis in original). As the Ninth Circuit noted, "[c]onsistent with Congress's purpose, the [VPPA]'s language is broad." *Id*. In response to Plaintiffs' claim under the VPPA, PornHub argues that (1) Plaintiffs do not properly allege that PornHub disclosed their personally identifiable information; (2) do not satisfy the VPPA's scienter requirement; and (3) that Plaintiffs are not "consumers" within the meaning of the VPPA. As explained below, all of PornHub's arguments fail.

---

[11] Additionally, with regards to the VPPA, Defendant's Privacy Notice is additionally defective under VPPA's statutory requirements. Under the VPPA, personally identifiable information may only be disclosed with the informed, written consent of the consumer (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (2) that is granted for a period not to exceed 2 years; and (3) where the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election. 18 U.S.C. § 2710(2)(B). None of those requirements are met by the purported Privacy Notice.

**i. PornHub Disclosed Plaintiffs' Personally Identifiable Information to Google and TrafficJunky.**

Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services..." 18 U.S.C. § 2710(a)(3). In this Circuit, "[p]ersonally identifiable information includes information that 'standing alone, identifies a person' as well as information that is 'capable of' identifying a person." *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017)). Plaintiffs allege that Pornhub knowingly transmits a wealth of information about how users interact with the Website to third-party advertisers such as Google, as well as its own advertising service, TrafficJunky. TAC ¶ 6. Specifically, Plaintiffs allege that through the Tracking Tools, PornHub captured and transmitted their Sensitive Information alongside PII, including Google's "Customer ID" or "cid" cookie identifier, which identifies the user's Google account. *Id.* ¶¶ 75-77; *see also Doe v. Shady Grove Reproductive Science Ctr., P.C.*, 2025 U.S. Dist. LEXIS 192453, at *12 (D. Md. Sep. 30, 2025) (holding that similar allegations transmittal of information "alongside a Client ID ('cid'), which is a unique identifier Google uses to distinguish the specific individual from all other individuals" was sufficiently personally identifiable to sustain a claim for intrusion on seclusion under Maryland law); *Gaige v. Exer Holding Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *10 (C.D. Cal. Jan. 30, 2025) (finding that transmission in a pixel of "Plaintiff's Facebook ID and IP address" were more than enough to establish transmission of personally identifiable information). Additionally, PornHub relates a wealth of other information pertaining the user's device, such as the user's language preference, screen resolution, browser software and version, operating system software and version, device type (e.g. PC, mobile phone), network type (e.g., cellular, LAN), and internet service provider, which can be used to identify the user through "browser fingerprinting." TAC ¶ 76; *see also id.* ¶¶ 67-69. In other words, Plaintiffs allege that PornHub disclosed their Sensitive Information to Google, using Google's Tracking

Tools, in Google's preferred format, alongside Google's own identifier that it uses to identify users across the Internet.[12]

PornHub's argument that these personal identifiers are somehow not personally identifying purports to rely upon the Ninth Circuit's decision in *Eichenberger*. PornHub reads *Eichenberger* too narrowly. In *Eichenberger*, every time the plaintiff watched a video on the ESPN app, ESPN disclosed to Adobe Analytics: "(1) [the plaintiff]'s Roku device serial number and (2) the identity of the video that he watched." 876 F.3d 979. Adobe could only use this information to identify an individual using "a complex 'Visitor Stitching technique.'" *Id*. *Eichenberger* found that ESPN would not have "understood that if [it] disclosed" Roku serial numbers to Adobe, that Adobe could use "that information could identify the customer." *Id*. at 985. In contrast, Pornhub understands that when it sends Google's identifiers to Google, Google can use that information to identify a person. *See,* § IV(C)(ii), *infra*. Google's identifiers, when provided to Google, are more effective identifiers than the "[n]ames and addresses" that *Eichenberger* found "still qualify" as PII, and are more effective than "other examples" the court considered including "an individual's name and telephone number or an individual's name and birthday" or "the GPS coordinates of a particular device." *Id*., at 986. Whereas a name and address could identify multiple people, such as a father and his identically-named son, Google's identifier is generally unique to an individual.

To hold that transmitting Google's unique identifiers to Google does not involve PII would open a massive loophole in the VPPA. Under Pornhub's view, "a video tape service provider is free to disclose a customer's video purchases to social media companies, data brokers, or anyone else, even when the provider knows that the third party will be able to easily identify the customer, so long as the provider uses a 'code' that an 'ordinary person' could not decipher." *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110, 1122 (W.D. Wis. 2025) (rejecting the idea that the VPPA employs an "ordinary person" standard whereby only those

[12] Plaintiffs also allege that TrafficJunky uses Google's cookie identifiers in connection with other information collected through the Website to identify users such as Plaintiffs.

identifiers that and "ordinary person" could use to identify a consumer were sufficient). In essence, Pornhub seeks to "skirt liability under the VPPA . . . by disclosing a unique identifier and a correlated look-up table." *Id*. (quoting *In re Hulu Priv. Litig.*, 2014 U.S. Dist. LEXIS 59479, at *11 (N.D. Cal. Apr. 28, 2014)).[13]

*Sellers v. Bleacher Report, Inc* is instructive. 2023 U.S. Dist. LEXIS 131579 (N.D. Cal. July 28, 2023). In *Sellers*, the defendant argued that Facebook's user identifiers were not sufficient to identify an individual. But the Court found that Facebook's "unique identifier … is enough, on its own, to identify a person." *Id*. at 13. As the Court noted, a "Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user," and the allegations created "a material issue of fact that the information transmitted to Facebook was sufficient to identify individual consumers." *Id*. (quoting *In re Hulu Priv. Litig.*, 2014 U.S. Dist. LEXIS 59479, at *46).[14] Likewise, here, Google's unique cookie identifier is sufficient to render Plaintiffs' Sensitive Information personally identifiable in the context of transmissions made to Google.

**ii. Plaintiffs Satisfy the VPPA's Scienter Requirement.**

Plaintiffs allege that "Defendant is aware that Google's Tracking Tools can associate web traffic with a specific individual." TAC ¶ 40. As the TAC explains, "when website operators use Google's Business Tools, they choose to participate in Google's mass surveillance network and, in turn, benefit from Google's collection of user data at the expense of their customers' privacy." *Id*. ¶ 10. Indeed, Plaintiffs allege throughout the TAC that PornHub ***directly benefited*** from Google's ability to identify specific individuals through

---

[13] At a minimum, Plaintiffs raise a question of fact that cannot be resolved here. *See Garcia v. Bandai Namco Ent. Am. Inc.*, 2025 U.S. Dist. LEXIS 152616, at *22-23 (C.D. Cal. Aug 7, 2025) (refusing to dismiss VPPA case where viewing history was associated with Facebook IDs); *see also Nguyen v. Elsevier Inc.*, 2025 U.S. Dist. LEXIS 109280, at *11 (N.D. Cal. June 9, 2025) (same).

[14] Many other cases have found the same. *See Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 723 (C.D. Cal. 2025) (Facebook ID sent to Meta is PII); *Edwards*, 773 F. Supp. 3d at 885 (same as to X, Twitter, and Meta identifiers); *Thornton v. Mindvalley, Inc.*, 2025 U.S. Dist. LEXIS 53202, at *11-12 (N.D. Cal. Feb. 14, 2025).

use of Google's targeted advertising and analytics services. *Id.* ¶¶ 7-11, 43-45, 52-55, 86-89. Plaintiffs additionally allege that PornHub purposefully "configured the [Google Tracking] Pixels on the Website to collect and transmit large amounts of additional user data" in excess to the routine "automatic events" collected by the Tracking Tools in their default state. *Id*. ¶ 74.

Plaintiffs' allegations that PornHub "knowingly disclosed [their PII] and video watching behavior" to Google by intentionally installing and configuring the Google Tracking Tools is sufficient to establish scienter under VPPA. *Cole v. LinkedIn Corp.*, 807 F. Supp. 3d 959, 969 (N.D. Cal. 2025). Plaintiffs are not required to allege "the basis for [their] contention that [Google] had the necessary scienter" with the "degree of specificity [demanded by PornHub] at the pleading stage." *Id*. On the contrary, numerous Courts applying California law have found that allegations like those made by Plaintiffs are sufficient to establish knowledge and intent to disclose personally identifiable Sensitive Information to a third-party, including in the context of VPPA. *See Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) ("allegations that defendant knowingly used the Pixel, provided FIDs [aka, Facebook IDs] and URLs to Meta sufficiently alleges a knowing disclosure" for VPPA claim); *Ade v. Viki, Inc.*, 2024 U.S. Dist. LEXIS 79467, at *6-7 (N.D. Cal. Mar. 28, 2024) (allegations that [the defendant] installed tracking pixel "in order to increase [its] profits" and "knew that by installing the Pixel on its website, the Pixel would send information identifying its members and their video-watching habits…plausibly plead that [the defendant] knowingly disclosed the plaintiffs' PII to Meta"); *see also Danforth v. Placentia-Linda Hosp.*, 2023 Cal. Super. LEXIS 67193, *6 (Cal. Super. Ct. Aug. 31, 2023) (holding that "[i]t is sufficient for a [p]laintiff to allege [a d]efendant[] intentionally procured Facebook Pixel or other tracking apps and installed it on [its] website" in order to satisfy the aiding and abetting requirement of CIPA"); *see M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *14-15 (N.D. Cal. Sep. 16, 2024) (same).

**iii. Plaintiffs Are Consumers Under the VPPA.**

The VPPA defines a consumer as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." § 2710(a)(1). PornHub argues, as a threshold matter, that Plaintiffs are not "consumers" as defined by the VPPA and, thus, cannot bring a claim for a violation of § 2710(b)(1).

To be considered a "consumer" under the VPPA, an individual does not have to make purchases, which "squares with the statutory text and the decisions of the two circuits to have considered the issue." *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) (citing *Yershov*, 820 F.3d at 487-88). "Congress could have easily specified that 'consumer' meant 'any renter, purchaser, or paid subscriber,' but chose not to qualify 'subscriber' in that fashion." *Id*. Thus, "the VPPA broadly protects paid and unpaid subscribers." *Id*.

Many courts in this Circuit agree. For example, the plaintiff in *Jackson v. Fandom, Inc.* alleged "that she created a Fandom account; became a registered user; 'provided Fandom with her PII, including her name and email address'; and then used Fandom to watch videos." 2023 U.S. Dist. LEXIS 125531, at *9 (N.D. Cal. July 20, 2023). The court held that her allegations were "sufficient to plead that [plaintiff] is a subscriber, and therefore a consumer, within the meaning of the statute." *Id*. Similarly, in *Ade v. Viki, Inc.*, the court held that allegations that the plaintiffs provided their names and email addresses to register as members of the defendant's website, that the membership gave the plaintiffs access to online video content and pre-recorded rentals, and that the plaintiffs watched the videos on a recurring basis plausibly alleged the plaintiffs were subscribers. 2024 U.S. Dist. LEXIS 79467, at *3. PornHub asserts that Plaintiffs are not "consumers" under VPPA because they "do not allege that they rented or purchased any goods or services," *see* Mot. 16-17 (citing *Kuzenski v. Uproxx LLC*, 2023 U.S. Dist. LEXIS 211822 (C.D. Cal. Nov. 27, 2023)), but most courts do not require that plaintiffs allege paid subscriptions. *See, e.g.*, *In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916, at *23 (N.D. Cal. Aug. 10, 2012) (finding plaintiffs'

allegations that they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services" sufficient to establish they were subscribers and, thus, consumers within the meaning of the VPPA); *Ghanaat*, 689 F. Supp. 3d at 722 (holding that allegations that plaintiffs registered for an account and viewed video content on defendant's website satisfied the "consumer" definition of the VPPA); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) ("where users exchanged personal information in return for a service, they are consumers [under VPPA]"); *Lee v. Springer Nature Am., Inc.,* 769 F. Supp. 3d 234, 254 (S.D.N.Y. 2025) ("A person becomes a VPPA subscriber by providing consideration in the form of personal information in exchange for a good or service.").

PornHub attempts to persuade the Court that the subscription must have a "factual nexus or relationship" with "the defendant's allegedly actionable video content." Mot. 17:12-13 (citing *Kuzenski,* 2023 U.S. Dist. LEXIS 211822, at *10 and *Carroll v. Chick-Fil-A, Inc*., 2024 U.S. Dist. LEXIS 45529, at *3 (N.D. Cal. Feb. 13, 2024)). Even if that were the case (it is not), PornHub cites no authority to support the argument that there is no "factual nexus or relationship" to the use of videos that are available to both registered and unregistered users. *See* Mot. 17:12-16. Indeed, nothing in *Jackson* indicates that the videos at issue were restricted to subscribers, yet the court found that the plaintiff was a subscriber. *Jackson*, 2023 U.S. Dist. LEXIS 125531, at *1. Even the sole opinion cited by PornHub acknowledges that exclusive access to video content is just one factor to be considered in the subscriber analysis. *Kuzenski*, 2023 U.S. Dist. LEXIS 211822, at *13, n. 6. ("Further, the Court is not creating a bright-line, categorical rule requiring that a subscription must provide access to exclusive video content not otherwise available to viewers without a subscription"). Moreover, PornHub's citation to *Carroll* illustrates the difference between Pornhub and Chick-Fil-A: Pornhub accounts are used to view video content, whereas Chick-Fil-A

accounts were used to purchase food, and the users separately viewed videos. *See* 2024 U.S. Dist. LEXIS 45529 at *3-5.

Further, PornHub tacitly admits that there *is* content on Pornhub that is not available to unregistered users. *See* Mot. 17 ("And ***much*** of the content on Pornhub is available to unregistered users") (emphasis added). Plaintiff M.S. indeed alleges that he was a paid subscriber during the relevant time period and viewed context exclusively available to paid members of Pornhub. Thus, this Court should not endeavor to resolve, prior to the commencement of discovery, a factual dispute over what videos registered and unregistered users can access on Pornhub.

For these reasons, Plaintiffs' VPPA claim is well-pled, and PornHub's Motion should be denied.

### D. PLAINTIFFS DID NOT CONSENT TO DEFENDANT'S VIOLATIONS OF THE ECPA AND CIPA.

PornHub's primary argument with regards to Plaintiffs' ECPA and CIPA claims is that Plaintiffs' purported consent to PornHub's Privacy Notice is an absolute bar to Plaintiffs' claims under the ECPA and CIPA. These arguments fail for the reasons stated in §§ IV(A)-(B), *supra*.[15]

### E. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS WELL-PLED.

To state a claim for intrusion upon seclusion, "[p]laintiffs must show that: (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) that the intrusion was 'highly offensive' to a reasonable person." *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, *16 (N.D. Cal. July 28, 2021) (quoting *Hernandez v. Hillsides*, *Inc.*, 47 Cal 4th 272, 287, 97 Cal.

---

[15] With regards to disclosures made to TrafficJunky, PornHub additionally argues that "a party …cannot eavesdrop on itself," and "the same entity operates both Pornhub and TrafficJunky." Mot. at 20 (citing *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066 (C.D. Cal. 2023)). But the Court should not conclude, as PornHub asks, that by communicating with PornHub through its Website, Plaintiffs granted it license to capture, sort and sell their Sensitive Information to unknown third-party entities for the purpose of serving Plaintiffs with targeted advertising based on their sexual preferences.

Rptr. 3d 274, 211 P.3d 1063 (2009)). PornHub argues that Plaintiffs cannot establish a reasonable expectation of privacy under these circumstances due to their purported consent to PornHub's Privacy Notice. This argument fails for the reasons stated in §§ IV(A)-(B), *supra*.

Plaintiffs have alleged an invasion of privacy. The vast majority of courts applying California law have found that allegations that a defendant transmitted an individual's "browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data" on a website where a user might reasonably expect privacy is sufficient to plead an "invasion of [that] reasonable privacy expectation." *Gabrielli v. Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *23 (N.D. Cal. Aug. 29, 2025).[16] Plaintiffs' allegations that PornHub disclosed their Sensitive Information, including specific information related to their sexual preferences and proclivities, thus properly state a claim for invasion of privacy. Indeed, the Court previously reached this conclusion when it found that Plaintiffs' Sensitive Information "'goes to matters of sensitive and highly personal nature, including one's sexuality'" in its Order granting Plaintiffs' request to proceed pseudonymously. ECF No. 27:4-5 (quoting *Quad Int'l., Inc. v. Doe*, 2012 U.S. Dist. LEXIS 165216, at *3 (N.D. Cal. Nov. 16, 2012)).

### F. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL-PLED

Once more, PornHub argues that Plaintiffs' purported consent to PornHub's Privacy Notice defeats Plaintiffs' negligence claims. This argument again fails for the reasons stated in §§ IV(A)-(B), *supra*. Additionally, PornHub argues that Plaintiffs' negligence claim fails through operation of the economic loss doctrine. This argument is unavailing. The economic

---

[16] *See also*, *Silver*, 2021 U.S. Dist. LEXIS 141090, at *15 ("plaintiffs' allegations that [defendant] compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801 (same); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (same); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *37 (N.D. Cal. Oct. 1, 2024) (same); *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) (same).

loss doctrine only encompasses purely economic injuries. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020). Where, "Plaintiffs have not alleged merely economic injury" but have rather "alleged a privacy injury stemming from the unauthorized sharing of their [Sensitive Information]," the economic loss doctrine is not applicable. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021).[17]

### G. UNJUST ENRICHMENT

To state a claim for unjust enrichment, Plaintiffs must allege that PornHub received and unjustly retained a benefit at their expense. *See ESG Cap. Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). In *Doe v. GoodRx Holdings, Inc.*, 2025 U.S. Dist. LEXIS 140287, at *44 (N.D. Cal. July 22, 2025), the plaintiffs alleged that the defendants "unlawfully intercepted their sensitive health data, that [they] did so without Plaintiffs' consent, and that [they] unjustly retained the" benefits. The court found these allegations "support a claim for unjust enrichment" under the *ESG Cap.* standard. *Id*. (citing *ESG Cap.*, 828 F.3d at 1038). Other District courts in the Ninth Circuit have similarly allowed unjust enrichment claims to proceed in pixel and data misuse cases like this one.[18] Moreover, the Ninth Circuit has held that plaintiffs are entitled to disgorgement of unjustly

---

[17] *See also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (holding that intangible harms constitute concrete injury where they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, ***disclosure of private information, and intrusion upon seclusion***") (emphasis added); *In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"), 956 F.3d 589, 598-99 (9th Cir. 2020) (data tracking and collection practices which "cause harm or a material risk of harm to [an individual's] interest in controlling their personal information" constitute a privacy injury); *Edwards*, 773 F. Supp. 3d at 877 (finding that Tracking Tools disclosure of the movies watched by plaintiffs inflicted a privacy injury).

[18] *See, e.g., Fullstory*, 712 F. Supp. 3d (denying dismissal of unjust enrichment claim in a Meta Pixel action alleging misuse of personally identifiable information); *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 10189, at *15 (N.D. Cal. Jan. 19, 2024) (similar); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 U.S. Dist. LEXIS 178369, at *6 (N.D. Cal. Oct. 3, 2023) (holding that plaintiffs sufficiently pleaded facts to establish unjust enrichment where plaintiffs would not have visited defendant's websites with surreptitiously installed tracking technologies that conferred a benefit to defendant at the expense of plaintiffs' privacy).

earned profits when a defendant's actions "caused the Plaintiffs' property to become less valuable." *In re Facebook Inc.*, 956 F.3d at 600.[19]

The cases cited by PornHub do not compel a different result. In both *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) and *Silver*, 2021 U.S. Dist. LEXIS 141090, the court found the unjust enrichment claims duplicative for seeking the same relief as the tort claims. Here, Plaintiffs seek disgorgement of unjustly retained benefits, a remedy not sought in connection with Plaintiffs' other claims. Accordingly, "Plaintiffs may "plead equitable relief under their unjust enrichment claim in addition to alternative legal relief." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 899-900 (C.D. Cal. 2024). PornHub also cites *Brodsky v. Apple Inc.*, 2019 U.S. Dist. LEXIS 148808, at *10 (N.D. Cal. Aug. 30, 2019), but *Brodsky* acknowledged the applicability of unjust enrichment claims in cases like this one, "in the absence of a true contract" and is thus inapplicable.

PornHub's consent argument again fails for the reasons stated in §§ IV(A)-(B), *supra*.

## V. <u>CONCLUSION</u>

For the aforementioned reasons, this Honorable Court should **DENY** PornHub's Motion to Dismiss.

---

[19] *See also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 815 (N.D. Cal. 2011) (recognizing plaintiff whose information was misappropriated by Facebook "may properly seek restitution"); *In re Anthem Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594, at *14 (N.D. Cal. May 27, 2016) (finding that plaintiffs' personal information was stolen in a data breach and thus lost value, which constituted an injury to plaintiffs); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 U.S. Dist. LEXIS 140212, *13-14 (N.D. Cal. Aug. 30, 2017) (same).

Dated: March 31, 2026

Respectfully submitted,

/s/ Sonjay Singh
Sonjay Singh (*Pro Hac Vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (772) 783-8436
Email: ssingh@sirillp.com

Michael Connett (SBN #300314)
**SIRI & GLIMSTAD LLP**
700 S. Flower St., Ste. 1000
Los Angeles, CA 90017
Tel: 212-532-1091
Email: mconnett@sirillp.com

*Attorneys for Plaintiffs and the Putative Class*