UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

M.S., et al.,

    Plaintiffs,

v.

AYLO FREESITES, LTD,

    Defendant.

No. 2:25-cv-01139-DJC-JDP

ORDER

   Plaintiffs M.S. and C.P. brought this action on behalf of themselves and other similarly situated individuals.  Plaintiffs allege that Defendant collects user data related to website visitors' usage of the Pornhub website and transmits that user data to third-party advertisers.

   Defendant has filed a Motion to Compel Arbitration or, in the alternative, to Dismiss the Complaint.  For the reasons stated below, the Court grants Defendant's Motion to Compel Arbitration.

## BACKGROUND

   The Court previously summarized the basic factual allegations in its prior order. (*See* ECF No. 56.)  With that order, the Court dismissed the prior Second Amended Complaint with leave to amend.  Plaintiffs have now filed the operative Third

Amended Complaint.  (TAC (ECF No. 57).)  Plaintiffs' general allegations remain largely the same, though Plaintiffs have now only named Aylo Freesites, Ltd as a defendant.

Defendant Aylo Freesites, Ltd now seeks to compel arbitration of Plaintiffs' claims based on Pornhub's Terms and Conditions.  Per the Third Amended Complaint, Plaintiff M.S. and C.P. both registered for Pornhub accounts and utilized the website in 2024 and 2025.[1]  (TAC ¶¶ 17, 22.)  Defendant asserts that Plaintiffs accepted Terms and Conditions when they registered for accounts and are now bound by an arbitration agreement contained within the Terms and Conditions.  In the alternative, Defendant seeks dismissal of Plaintiffs' claims for failure to state a claim.

Briefing on this matter is complete.  (Mot. (ECF No. 59-1); Opp'n (ECF No. 63); Reply (ECF No. 64).)  The matter was submitted on the papers without oral argument pursuant to Local Rule 230(g).  (ECF No. 65.)

## LEGAL STANDARD

The FAA governs arbitration agreements.  9 U.S.C. § 2.  Under the FAA, a signatory to an arbitration agreement may obtain an order directing a noncomplying party to arbitrate in the manner provided for in the agreement.  9 U.S.C. § 4.  In weighing a motion to compel arbitration, a court must determine: (1) Whether a valid agreement to arbitrate exists and, if it does; (2) Whether the agreement encompasses the dispute at issue.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016).  "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard" of Federal Rule of Civil Procedure 56.  *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citations

---

[1] In a footnote with their Motion, Defendant asserts, without citation to any evidence, that one of the two Plaintiffs may have never created a Pornhub account.  Plaintiffs do not concede this factual issue (Opp'n at 12 n.7), and in the absence of any evidence to the contrary, the Court must draw reasonable inferences in Plaintiffs' favor and take Plaintiffs' factual allegations as true.

2

omitted).  The party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration.  *Id.*; *see Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991).  The decision to compel arbitration is mandatory, not discretionary, if the requirements are met.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## DISCUSSION

### I.  Sufficiency of Evidence as to the Existence of the Agreement to Arbitrate

Plaintiffs argue that the evidence presented by Defendant in support of their claim that there is an arbitration agreement.  First, Plaintiffs argue that the exhibits provided are "not true and accurate" as they lacked certain visual elements that usually appear when the webpage is loaded in a browser.  (Opp'n at 6.)  Presenting dynamic webpages via printed formats and screenshots is a necessarily fraught effort due to the fact that perfect recreation is an impossibility.  The original exhibit presented by Defendant with their Motion was a sufficiently fair and accurate representation for them to carry their burden.  Plaintiffs' clarification with their Opposition regarding the color and format of the webpage is also reasonable, and the Court relies below on that presentation of the sign-up webpage.  But this does not provide grounds for the Court to find that Defendant failed to meet their burden.

Plaintiffs also argue that Defendant "does not authenticate the documents it attaches."  (*Id.*)  Plaintiffs' complaint here seems to be that Defendant has not presented a signed version of the agreements.  Plaintiffs have not presented any authority that states that the agreements in question must be physically signed by the user.  To the contrary and as discussed below, Courts regularly uphold online agreements that are accepted without a signature and in a similar manner to the agreements here.  Plaintiffs alternatively dispute that Defendant has not properly authenticated the accuracy of the agreements in question.  However, Plaintiffs have

not provided any basis to believe that the presented agreements are not true and accurate. "Courts generally have a dim view of authentication objections presented in the absence of any indication that the record's authenticity is genuinely in dispute." *Greenblatt v. Patel*, No. 1:12-cv-00046-LJO, 2015 WL 893384, at *11 (E.D. Cal. Mar. 2, 2015) (collecting cases). Moreover, Defendant asserts that the agreements in question were obtained using the Wayback Machine and provide links to those records. (Lisy Decl. (ECF No. 5-2) at 2–5.) Courts have broadly taken the view that the Wayback Machine is of such sufficient reliability that records from the Wayback Machine are subject to judicial notice. *See J.J. v. Ashlynn Mktg. Grp.*, No. 3:24-cv-00311-GPC-MSB, 2026 WL 1157165, at *3 (S.D. Cal. April 28, 2026) (collecting cases). In the absence of any identifiable dispute as to the accuracy of the agreements in question, the Court rejects Plaintiffs' argument that these records have been insufficiently authenticated. Defendant has established that there is no genuine dispute of material fact that the agreements, as presented, were the agreements at the time in question.[2]

## II. Notice of the Arbitration Agreement

Beyond Plaintiffs' initial dispute that Defendant failed to adequately establish the agreement to arbitrate, Plaintiffs' main contention in opposition to Defendant's Motion to Compel Arbitration is that Plaintiffs did not receive adequate notice of the arbitration agreement. Plaintiffs thus argue that due to the lack of adequate notice, no valid agreement to arbitrate exists as there was no manifestation of assent to the Terms and Conditions.

To determine whether a valid agreement to arbitrate exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the parties agree that

---

[2] Defendant has provided a number of versions of the Terms and Conditions to cover the period of possible account creation. None of these versions is materially different with regard to the relevant substantive provisions, however, so the Court will not address any distinctions.

California or New York law governs, which both "apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (internal citations and quotation marks omitted). "To form a contract under New York or California law, the parties must manifest their mutual assent to the terms of the agreement[,]" which can be done through conduct. *Id.* "However, the conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* (quoting Restatement (Second) of Contracts § 19(2) (1981)) (cleaned up). "These elemental principles of contract formation apply with equal force to contracts formed online." *Id.* at 855–56.

"To avoid the unfairness of enforcing contractual terms that consumers never intended to accept," courts only find mutual assent through inquiry notice where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. The Terms and Conditions in question here are a form of agreement sometimes called "sign-up wrap" — that being an agreement "in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service."[3] *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464 (2021). Sign-up wrap is an enforceable form of online agreement, provided it complies with the

---

[3] In their Reply, Defendant states that the Terms and Conditions are "a clickwrap agreement" not a browsewrap agreement, as are in some of the cases cited by Plaintiff. Strictly speaking, this is incorrect. Clickwrap agreements require the user "to click on an 'I agree' box after being presented with a list of terms and conditions of use" in order to accept the agreement. *Sellers*, 73 Cal. App. 5th at 470. Courts have distinguished sign-up wrap from clickwrap in that sign-up wrap functions more as a hybrid of clickwrap and browsewrap and thus is better approached as its own form of wrap agreement. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176–77 (9th Cir. 2014); *see also Sellers*, 73 Cal. App. 5th at 464 (discussing this form of agreement as "sign-in-wrap" but discussing the same form of agreement).

requirements discussed above.  There is no dispute that the latter requirement for assent is met; the sign-up page requires the users to click a "sign up" button to proceed.  Plaintiffs' dispute is whether Plaintiffs as users were on notice regarding the terms and conditions based on the form of their disclosure on the sign-up webpage.  In determining whether a sign-up wrap disclosure is reasonably conspicuous, courts consider the "context of the transaction" as well as "the 'traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design[.]'"  *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025).

The parties do not dispute the features of the sign-up page.[4]  In the right third of the black webpage is the sign-up portion of the page.  It has a large bold title in white font that says, "Sign Up for Free" with smaller grey text below that says "and enhance your experience[.]" (*See* ECF No. 63-2.)  Below this are three boxes for users to enter an email, username, and password (all utilizing grey text) followed by a button that states "Sign Up!" in larger white text, with the phrase "Or Log In" appearing next to it in white and orange text.  Below this button is the statement "By signing up, you agree to our Terms and Conditions[.]" (*Id.*)  The first portion of this statement is in which text, with "Terms and Conditions" appearing in orange text.  (*Id.*)  Finally, there is text which states "Resent confirmation email" in orange text below the previous statement.  (*Id.*)  These elements are all contained within a black box, distinguishing it from other elements on the page.

---

[4] Plaintiffs noted objections to the form of the sign-up pages that were produced with Defendant's Motion as it lacked color and was fully redacted "to obscure its most distracting visual elements." (Opp'n at 8.)  Plaintiffs produced a version that they believed was a more accurate representation of the webpage. (ECF No. 63-2.)  While it was captured recently, it remains fundamentally the same as the versions produced by Defendant except for the inclusion of color and various visual elements.  Defendant does not disagree with the fundamental accuracy of Plaintiffs' representation of the webpage, though, as discussed below, they do contest whether the zoom level used by Plaintiffs makes certain elements appear more prominent. (Reply at 6.)  Thus, the Court references the version as produced by Plaintiffs as a reproduction of the sign-up page. (*See* ECF No. 63-2.)  While Defendant had originally produced a number of versions of the sign-up page to cover the potential period of account creation, there is no meaningful difference in these versions, and thus reference to the version provided by Plaintiffs presents no issue.

6

Looking at the first of the two considerations identified by the Ninth Circuit in *Chabolla*, the context of the transaction supports that notice of the terms was reasonably conspicuous. Generally speaking, when a user enters into a continuing relationship, users should generally expect themselves to be bound to some form of terms and conditions. *See Cabolla*, 129 F.4th at 1155; *see also Sellers*, 73 Cal. App. 5th at 477. The sign-up process at issue here is clearly indicative of an ongoing relationship between the website and the user. The entire process in question is designed to create an ongoing relationship through the user's registration for an account. While the sign-up is for a free account, it is not a "free trial" of a paid service. As "the registration process clearly contemplated some sort of continuing relationship that would require some terms and conditions," *Sellers*, 73 Cal. App. 4th at 480, the context clearly weighs in favor of the disclosure being reasonably conspicuous.

Considering the more traditional inquiry regarding the visual presentation of the Terms and Conditions, the Court also finds that the disclosure of the terms of service is reasonably conspicuous. The Ninth Circuit has not created "a checklist for website designers" or "per se design rules" that must be followed for a contract to be formed. *Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025). Courts instead look at various characteristics including: (1) the size of the text; (2) the color of the text compared to the background; (3) the location of the text and its proximity to where the user clicks to consent; (4) the obviousness of an associated hyperlink; and (5) other elements on the screen which clutter or obscure the textual notice. *See Sellers*, 73 Cal. App. 5th at 473; *see also In re Stubhub Refund Litig.*, No. 22-15879, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023). Here, these elements largely suggest the disclosure is sufficiently conspicuous. The sign-up portion of the webpage is set off in a black box with the text of the statement in white, except for "Terms and Conditions" which appears in orange. This sets the text apart from the black background and the other, less noticeable, grey font used elsewhere in the text boxes. The font size is smaller than most of the other text on the page, but it is not so small or in a format that

the Court can conclude that a reasonably prudent user would not have seen it.  Given the text color and the adjacency to the "Sign Up!" button immediately above it, the disclosure is quite prominent.  Moreover, like all other hyperlinks in the sign-up portion of the page, the Terms and Conditions are orange, increasing the visual emphasis on this text and setting it off as a clear hyperlink.  While the webpage itself contains a number of other elements, the sign-up portion of the page is set off in a black box and is free from any other visual elements that might distract the user.  In totality, the Terms and Conditions are reasonably conspicuous in the sign-up process and put the user on notice that they were agreeing to be bound by them.

Plaintiffs argue that the disclosure of the terms and conditions were insufficient in three ways: (1) the signup page contained pornographic images that depicted sexual acts, thus distracting from the Terms and Conditions hyperlink; (2) the text size of the Terms and Conditions hyperlink is the smallest test on the page; and (3) the signup page utilizes white text on a black background and includes "a highly distracting graphic of two women kissing placed directly behind the sign-up box and notice." (Opp'n at 8–10 (emphasis omitted).)  Plaintiffs' first argument concerns imagery which appears below the sign-up box on the page.  While it is true that this image could provide a distraction for users, it is clearly set off from the sign-up portion of the page.[5]  Given the nature of the Pornhub site itself, this image is also hardly unexpected or startling.  The Court addressed above Plaintiffs' second argument regarding the prominence of the text.  In short, while the Court agrees the text is small, it is not so small that it is not readily apparent to the user given its text color and location.  Finally, the Court disagrees that the "contrasting colors further draw

---

[5] Defendant argues that these elements would typically "fall outside the user's ordinary field of vision." (Reply at 6.)  The Court declines to make any finding on this basis.  Webpages are viewed in a wide variety of aspect ratios with varying levels of zoom.  It would be improper for the Court to make any finding based on an anointed "correct" viewing format.  Defendant does not contest that the visual elements in question appear on the webpage.  It is also ultimately unnecessary for the Court to consider this issue as the Court finds the Terms and Conditions were reasonably conspicuous even in Plaintiffs' presentation.

8

attention away" from the Terms and Conditions.  The white and orange text on a black background increases the prominence of the text.  The background image Plaintiffs raise is barely visible and does not affect the signup box, which has a full black background.  The Court is unpersuaded by Plaintiffs' arguments that they lacked adequate notice.

Given the above, the Court concludes that the website provided reasonably conspicuous notice of the terms and that Plaintiffs accepted the Terms and Conditions by signing up for a Pornhub account.  Plaintiffs are thus bound by the Terms and Conditions, including the arbitration agreement.  Accordingly, Defendant's Motion to Compel Arbitration is granted, and this matter will be stayed pursuant to the FAA.  9 U.S.C. § 3.

<strong>CONCLUSION</strong>

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Compel Arbitration or to Dismiss the Third Amended Complaint (ECF No. 59) is GRANTED IN PART as to Defendant's request to compel arbitration.

2. This matter will be STAYED pending resolution of the arbitration.

3. Defendant shall file a notice of completion with the Court within thirty (30) days of the completion of arbitration.

4. The Clerk of Court is directed to administratively close this case.

IT IS SO ORDERED.

Dated:   **May 27, 2026**

_____
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE